Citation Nr: 1722376 
Decision Date: 06/15/17 Archive Date: 06/29/17

DOCKET NO. 14-08 618 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Newark, New Jersey


THE ISSUES

1. Entitlement to service connection for a psychiatric disorder, to include as secondary to service-connected scar disabilities.

2. Entitlement to an increased rating for post traumatic headaches, currently evaluated as 30 percent disabling.

3. Entitlement to a compensable rating for a scar and residuals of a bone graft of the left hip.

4. Entitlement to an increased rating for laceration scars of the scalp and neck, as residuals of a head injury, currently evaluated as 30 percent disabling, based on disfigurement.

5. Entitlement to an increased rating for laceration scars of the scalp and neck, as residuals of a head injury, currently evaluated as 10 percent disabling, based on painful scarring.

6. Entitlement to a compensable rating for scars and residuals of lacerations on the right thumb.

7. Entitlement to a total disability rating based on individual unemployability due to service-connected disabilities (TDIU).


REPRESENTATION

Veteran represented by: Jeffrey E. Marion, Attorney


ATTORNEY FOR THE BOARD

B. Isaacs, Associate Counsel


INTRODUCTION

The Veteran served on active duty from October 1995 to June 1998.

These matters come before the Board of Veterans Appeals (Board) on appeal from a January 2012 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO).

These issues were previously remanded in September 2015 for additional development. At that time, the Board recharacterized the Veteran's psychiatric claim more broadly in order to clarify the nature of the benefit sought and ensure complete consideration of the claim. Clemons v. Shinseki, 23 Vet. App. 1, 5-6, 8 (2009).

The Board notes that in a July 2016 rating decision, the RO granted the Veteran a separate 30 percent rating for his scars of the scalp and neck based on disfigurement, effective March 15, 2011, the date of the increased rating claim. See 38 C.F.R. § 4.118, Diagnostic Code (DC) 7800 (2016). As the grant of the separate 30 percent rating for disfiguring scars of the scalp and neck was not a complete grant of the maximum benefits available under DC 7800, the issue remains before the Board. See AB v. Brown, 6 Vet. App. 35 (1993).

Although additional evidence was received subsequent to September 2016 statement of the case and February 2017 supplemental statement of the case, the Board finds that the additional evidence is not pertinent to the issues decided herein or is duplicative of that already of record. Thus, a remand for another supplemental statement of the case is not necessary for these claims. See 38 C.F.R. § 20.1304(c) (2016).

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900 (c). 38 U.S.C.A. § 7107 (a)(2) (West 2014).

The issue of entitlement to a TDIU is addressed in the REMAND portion of the decision below and is REMANDED to the agency of original jurisdiction (AOJ).


FINDINGS OF FACT

1. The Veteran's paranoid schizophrenia is related to service.

2. The Veteran's migraine headaches approximate very frequent completely prostrating and prolonged attacks productive of severe economic inadaptability.

3. The Veteran's scar of the left hip has been manifested by a painful or unstable scar.

4. The Veteran's separately rated laceration scars of the scalp and neck are mildly disfiguring and include a scar 16 centimeters in length, as well as 2 centimeters wide.

5. The Veteran's laceration scars of the scalp and neck include two scars that are painful and neither is unstable.

6. The scars on the Veteran's right thumb are not reported as painful, unstable or productive of limitation of motion or functional loss.


CONCLUSIONS OF LAW

1. The criteria for service connection for a psychiatric disorder, diagnosed as paranoid type schizophrenia, have been met. 38 U.S.C.A. §§ 1101, 1110, 5103, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.304 (2016).

2. The criteria for a disability rating of 50 percent for migraine headaches have been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.102, 4.1, 4.3, 4.7, 4.10, 4.124a, DC 8100 (2016).

3. The criteria for a 10 percent disability rating, but not higher, for a left hip scar have been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.102, 4.3, 4.7, 4.118, DC 7804 (2016).

4. The criteria for a separate schedular rating in excess of 30 percent for disfiguring scars of the scalp and neck have not been met. 38 U.S.C.A. §§ 1155, 5107(b) (West 2014); 38 C.F.R. §§ 4.3, 4.7, 4.118, DC 7800 (2016).

5. The criteria for a disability rating in excess of 10 percent for painful scars of the scalp and neck have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.102, 4.3, 4.7, 4.118, DC 7804 (2016).

6. The criteria for a compensable rating for right thumb scars have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.102, 4.3 (2016); 38 C.F.R. § 4.118, DC 7804 (2016).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Board has limited the discussion below to the relevant law and evidence required to support its findings of fact and conclusions of law, as well as to the specific contentions regarding the case as raised directly by the Veteran and those reasonably raised by the record. See Scott v. McDonald, 789 F.3d 1375, 1381 (Fed. Cir. 2015); Robinson v. Peake, 21 Vet. App. 545, 552 (2008).

I. Service Connection

The Veteran contends that he suffers from a psychiatric disorder that had its onset during or is otherwise related to service. His contentions include that a current psychiatric disorder may be related to his documented motor vehicle accidents from service or in the alternative, to a current service-connected disability.

Legal Criteria

Service connection may be granted for a disability resulting from a disease or injury incurred in or aggravated by active service. See 38 U.S.C.A. § 1110 (West 2014); 38 C.F.R. § 3.303 (2016). "To establish a right to compensation for a present disability, a veteran must show: "(1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service"-the so-called "nexus" requirement." Holton v. Shinseki, 557 F.3d 1362, 1366 (Fed. Cir. 2010) (quoting Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004)).

Service connection may be granted on a secondary basis for a disability if it is proximately due to or the result of a service-connected disease or injury. 38 C.F.R. § 3.310 (a). Establishing service connection on a secondary basis requires evidence sufficient to show (1) that a current disability exists and (2) that the current disability was either (a) proximately caused by or (b) proximately aggravated by a service-connected disability. Allen v. Brown, 7 Vet. App. 439, 448 (1995) (en banc).

Service connection for PTSD requires: (1) medical evidence diagnosing the condition in accordance with 38 C.F.R. § 4.125 (a) (conforming to the DSM-IV); (2) medical evidence establishing a link between current symptoms and an in-service stressor; and (3) credible supporting evidence that the claimed in-service stressor occurred. 38 C.F.R. § 3.304 (f) (2016).

Analysis

The Veteran received psychiatric treatment during service. His service treatment records document an April 1997 severe motor vehicle accident that led to the Veteran requiring neck surgery, leaving multiple scars. Further, April 1998 service treatment records reflects the Veteran's admission to a psychiatric unit for two days. During his April 1998 psychiatric treatment, possible suicide attempts and cuts on his wrist were noted.

The Veteran's claim was initially denied in a September 2003 rating decision. Following his March 2011 claim to reopen, he was afforded an October 2011 VA examination. The Veteran was diagnosed with paranoid schizophrenia. The Veteran also claimed PTSD; however, the examiner indicated there was no evidence of that disorder and that all the evidence pointed to schizophrenia, paranoid type, marked by hallucinations and delusions. He indicated the onset of the condition was approximately 2003.

The Veteran reported to the examiner that his first psychiatric experience was prior to discharge in 1998. He indicated he overdosed on alcohol and ended up spending several days in the hospital. With regard to possible PTSD, the Veteran reported his 1997 motor vehicle accident as the stressful event leading to the disorder. As noted, the examiner determined there was no evidence of PTSD. He stated there was nothing to substantiate any psychiatric issues resulting from the incident, as well as no nexus between the incident and the Veteran's first psychiatric experience of schizophrenia approximately six years later.

The October 2011 VA examiner submitted a January 2012 addendum opinion in which he similarly indicated there was no evidence of PTSD for the Veteran. He reported schizophrenia was present, hallucinations and delusions were noted by the Veteran's history, and as a consequence, the diagnosis was based upon the historical information provided by the Veteran only. He noted that upon examination, there was no obvious psychiatric condition present at that time. With regard to a potential nexus, the examiner indicated that although the Veteran sought psychiatric treatment during service, there was no relationship between any psychiatric diagnosis and the Veteran's service. He reported that the Veteran was discharged in 1998 and his subjective schizophrenia symptoms did not begin until 2003. He noted there is no evidence to support an etiology or nexus between any claimed psychiatric condition and his service. The examiner went on to report that the psychiatric treatment the Veteran underwent in service was related to his excessive use of alcohol from when he was hospitalized for several days in 1998 and his schizophrenia did not appear until after service.

The Veteran has been provided psychiatric treatment through the VA medical center for his symptoms. A June 2014 VA treatment record indicated the Veteran reported behavioral disturbances during service and overt psychological symptomatology, including alcohol abuse, violent acts, auditory and visual hallucinations and delusional ideation. The examiner reported that continued use of mood stabilizer/antiseizure medication may be advantageous to the Veteran relative to alternative medication, given his history of traumatic brain injury (TBI). However, he stated the Veteran's persistent psychotic symptoms are more attributable to a schizophrenic disorder than TBI. The examiner further stated that given the temporal association between the Veteran's behavioral disturbances in the latter stages of his service, it would be reasonable for him to apply for an increase in service connection due to a mental disorder and his history of a traumatic brain injury. The examiner indicated irrespective of the etiology, the focus of the Veteran's care would be the management of his psychotic (affective and delusional) symptomatology.

The Board notes a February 2015 brief from the Veteran's representative was submitted. He restated the Veteran's contentions, including that the Veteran's psychiatric disorder may be related to the in-service motor vehicle accident, his regimen of anti-depressant and anti-anxiety medication prescribed during service, and/or secondary to a service-connected disability, including scars.

The issue was before the Board in September 2015, which reopened the psychiatric claim due to the receipt of new and material evidence and remanded the claim to obtain a new VA examination to determine whether the Veteran has any diagnosed psychiatric disorder related to service or a service-connected disability. The Board indicated VA examination and opinions were required for direct and secondary theories of entitlement. See Barr v. Nicholson, 21 Vet. App. 303, 312 (2007).

Thereafter, the Veteran was afforded a July 2016 VA examination. The examiner diagnosed the Veteran with chronic paranoid schizophrenia. He indicated any traumatic brain injury symptoms are independent of the current psychiatric disorder. The Veteran reported that he is depressed and that he sleeps too much. He further reported some suicidal ideation, auditory and visual hallucinations, paranoid ideation, memory loss and isolation. Further, symptoms included anxiety, suspiciousness, chronic sleep impairment, flattened affect, and difficulty in establishing and maintaining effective work and social relationships.

The examiner indicated a diagnosis of chronic paranoid schizophrenia is warranted based on the Veteran's psychiatric history and his description of his symptoms. He stated the Veteran had been admitted to acute psychiatry four times between 2003 and 2010 and the diagnosis on all four occasions included schizophrenic disorder. He concluded that based on the Veteran's clinical presentation and his service records, a diagnosis of schizophrenia, which had its onset in service.

Despite the positive VA opinion, and for reasons that are unclear to the Board, the RO requested an additional opinion to address any potential nexus between the psychiatric diagnosis and service. Thereafter, an addendum VA opinion was submitted in February 2017. The examiner stated the notes from the Veteran's providers described him as having a normal mood and consistently denying any suicidal ideation or intent in service. He reported the Veteran's providers also noted no evidence of a mood disorder and did indicate a positive drug screen. Further, the examiner stated there were no signs or symptoms of a psychotic disorder and there was no explanation as to why the Veteran was given Trazodone, although it is often now used as a sedative. He concluded there is no evidence that the Veteran's psychiatric disorder started in service.

Another February 2017 addendum psychiatric opinion was submitted from the examiner. He indicated that the records from 1998 indicated there were no signs and symptoms of a psychotic disorder and also that the Veteran had been intoxicated. He stated there is no evidence of a psychiatric disorder until the Veteran's first admission in 2003. The examiner further reported there is no accepted etiology for schizophrenic disorder (or other major psychiatric disorders other than PTSD). He noted persons who have symptoms of both schizophrenia (in this case a belief that he hears the voice of God) and who have a strong affective component (evidenced by his depression, his attachment to his wife, family and children) are most appropriately diagnosed as having a schizoaffective disorder.

The February 2017 examiner further stated it is not unusual for people to have diagnoses of schizophrenia, depression and also to be in remission and have few symptoms at certain times in their lives. Since his schizophrenia did not manifest itself while he was in the service or within a year after his service, there is no evidence that it was caused by his service. He indicated the record clearly stated that there was no evidence of a psychiatric disorder and therefore, no evidence that he was given trazadone for a disorder that was not yet diagnosed. Since there is no evidence of this or any other psychiatric diagnosis, he reasoned there could be no exacerbation or aggravation of a diagnosis.

After review of all the relevant evidence, including the prior VA opinions of record, VA treatment records and service treatment records, the evidence supports that the Veteran's paranoid schizophrenia is related to service. 

The Board notes that there is positive and negative evidence in the record. The June 2014 VA treatment record discussed the Veteran's psychiatric symptoms, including behavioral disturbances during service and overt psychological symptomatology, such as alcohol abuse, violent acts, auditory and visual hallucinations and delusional ideation. The examiner stated that based on the Veteran's behavioral disturbances in the latter stages of his service, it would be reasonable for him to apply for an increase in service connection due to a mental disorder and his history of a traumatic brain injury.

Additionally, following the September 2015 Board remand, the Veteran was afforded a July 2016 VA examination. The examiner opined that a diagnosis of chronic paranoid schizophrenia is warranted based on the Veteran's psychiatric history and his description of his symptoms. He noted the Veteran's prior treatment history, and concluded that the record supports a diagnosis of schizophrenia and that the condition was first noted in service.

Thereafter, the RO obtained addendum opinions in February 2017 with regard to the etiology of the diagnosed schizophrenia condition. The examiner indicated the Veteran had a normal mood in service and no suicidal ideation. Further, he concluded there is no evidence that the Veteran's psychiatric disorder started in service. He stated since there is no evidence of a psychiatric diagnosis, there could not be any exacerbation or aggravation of a diagnosis, since such did not exist.

The Board determines it was not necessary for the RO to obtain addendum opinions with regard to this claim following the July 2016 VA examination report. The July 2016 opinion shows that based on the Veteran's clinical presentation and medical history, a diagnosis of schizophrenia, which was first noted in service, is warranted. Further, in the February 2017 addendum, the examiner indicated there is no evidence that the Veteran's psychiatric disorder started in service, which contradicts his July 2016 opinion.

Overall, the Board finds that the evidence has reached a level of equipoise, as there is an approximate balance of positive and negative medical evidence in the record with regard to the etiology of his paranoid schizophrenia. As the positive and negative medical evidence of record is at least in relative equipoise, the benefit-of-the-doubt rule applies, and service connection for the Veteran's paranoid schizophrenia is warranted. See 38 U.S.C.A. § 5107 (b); 38 C.F.R. § 3.102; see also Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990).

II. Increased Ratings

Ratings are based on a schedule of reductions in earning capacity from specific injuries or combination of injuries. The ratings shall be based, as far as practicable, upon the average impairments of earning capacity resulting from such injuries in civil occupations. 38 U.S.C.A. § 1155 (West 2014). Generally, the degrees of disability specified are considered adequate to compensate for considerable loss of working time from exacerbations or illnesses proportionate to the severity of the several grades of disability. 38 C.F.R. § 4.1 (2016).

Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7 (2016). When after careful consideration of all procurable and assembled data, a reasonable doubt arises regarding the degree of disability such doubt will be resolved in favor of the claimant. 38 U.S.C.A. § 5107 (b) (West 2014); 38 C.F.R. §§ 3.102, 4.3 (2016).

A. Post Traumatic Headaches

The Veteran is currently in receipt of a 30 percent rating for his migraine headaches and contends that the severity of his condition has worsened and warrants a higher rating.

DC 8100 provides ratings for migraine headaches. Migraine headaches with characteristic prostrating attacks occurring on an average once a month over last several months are rated 30 percent disabling. Migraine headaches with very frequent completely prostrating and prolonged attacks productive of severe economic inadaptability are rated 50 percent disabling. 38 C.F.R. § 4.124a, DC 8100. 

"Productive of severe economic inadaptability" can be read as having either the meaning of "producing" or "capable of producing," and nowhere in DC 8100 is "inadaptability" defined, nor can a definition be found elsewhere in title 38 of the Code of Federal Regulations. But, nothing in DC 8100 requires that the claimant be completely unable to work in order to qualify for a 50 percent rating. Pierce v. Principi, 18 Vet. App. 440, 445-46 (2004).

Following the Veteran's June 2011 claim for an increased rating for his headache condition, he was afforded a November 2011 VA examination. The Veteran reported to the examiner getting headaches since his in-service motor vehicle accident. He reported that the severe accident left him unconscious for 45 minutes and he suffered post traumatic amnesia. He indicated he usually gets headaches on the left fronto-temporal region which spread towards the vertex and can encompass his whole head. He noted they can last from 15-20 minutes up to 2-3 hours and the pain intensity can vary from 5/10 to 8/10. He stated his headaches are associated with nausea, no vomiting, photophobia, phonophobia and can occur 3-4 times per month. The Veteran experiences pain on both sides of his head.

Subsequently, VA treatment records have been submitted suggesting a worsening of the Veteran's headache symptoms. An August 2016 VA treatment record at a neurology clinic noted that the Veteran complained of headaches 3-5 times per day and that his headaches were increasing in intensity. He indicated throbbing and that the headaches were most severe over his cranial scar with radiation to the back of his head. He reported lightheadedness, blurry vision and seeing spots which preceded the headaches, and which were associated with nausea but no vomiting. He stated the headaches cause a "pins and needles" sensation in the left fronto-temporal region with radiating symptoms to his neck. A September 2016 VA record indicated the Veteran continues to have neck pain with associated migraine headaches and noted that the disability has been getting worse since 2011. 

After a review of all the evidence of record, both lay and medical, the Board finds that the service-connected migraine headaches have manifested in symptoms and impairment that more nearly approximate very frequent completely prostrating and prolonged attacks that are productive of severe economic inadaptability.

A May 2017 VA record indicates the Veteran is unemployed and only does work as a handyman. As the Veteran reported in August 2016 that he suffers 3-5 headaches per day, the Board finds the condition certainly affects his ability to work. Further, the evidence supports that the Veteran's migraine symptoms have continued to worsen since 2011 and that he currently suffers some level of headaches every day. Further, symptoms of nausea and sensitivity to light and sound were reported by the Veteran, along with radiating pain down to his neck.

Therefore, resolving all doubt in the Veteran's favor, the Board finds that the evidence is in equipoise as to whether his migraine headaches are productive of severe economic inadaptability and that a 50 percent disability rating is warranted for the disability. 38 C.F.R. § 4.124a. As 50 percent is the highest rating available for migraine headaches, no higher schedular evaluation is available for consideration. 38 C.F.R. § 4.124a DC 8100.

B. Scars

The rating schedule for evaluating scars was revised and amended in 2008. See 73 Fed. Reg. 54708-12 (Sept. 23, 2008). The effective date of the revisions is October 23, 2008, and the revised criteria apply to all applications for benefits received by VA on or after that date. Because the Veteran's increased rating claims were received after October 23, 2008, the revised criteria will be applied in his case.

DC 7800 rates scars based upon disfigurement of the head, face, or neck. A 10 percent rating is warranted if there is one characteristic of disfigurement. A 30 percent rating is warranted if there are visible or palpable tissue loss and either gross distortion or asymmetry of one feature or paired set of features [nose, chin, forehead, eyes (including eyelids), ears (auricles), cheeks, lips], or if there are two or three characteristics of disfigurement. A 50 percent rating is warranted if there is visible or palpable tissue loss and either gross distortion or asymmetry of two features or paired sets of features [nose, chin, forehead, eyes (including eyelids), ears (auricles), cheeks, lips], or if there are four or five characteristics of disfigurement. An 80 percent rating is warranted for visible or palpable tissue loss and either gross distortion or asymmetry of three or more features or paired sets of features [nose, chin, forehead, eyes (including eyelids), ears (auricles), cheeks, lips], or if there are six or more characteristics of disfigurement. 38 C.F.R. § 4.118, DC 7800 (2016).

The eight characteristics of disfigurement are: (1) A scar five or more inches (13 or more centimeters) in length; (2) A scar at least one-quarter inch (0.6 centimeters) wide at its widest part; (3) The surface contour of the scar is elevated or depressed on palpation; (4) The scar is adherent to underlying tissue; (5) The skin is hypo- or hyper-pigmented in an area exceeding six square inches (39 square centimeters); (6) The skin texture is abnormal (irregular, atrophic, shiny, scaly, etc.) in an area exceeding six square inches (39 square centimeters); (7) There is underlying soft tissue missing in an area exceeding six square inches (39 square centimeters); (8) The skin is indurated and inflexible in an area exceeding six square inches (39 square centimeters). Id.

Additionally, under DC 7804, one or two superficial scars that are unstable or painful on examination warrant a 10 percent rating. Three or four scars that are unstable or painful warrant a 20 percent rating and five or more scars that are unstable or painful warrant a 30 percent rating. 38 C.F.R. § 4.118, DC 7804 (2016). 
A note, following the criteria, defines an unstable scar as one where, for any reason, there is frequent loss of covering of skin over the scar. Id.

1. Left Hip

The Veteran filed a March 2011 claim for an increased (compensable) rating for a scar on his left hip, as well as increased ratings for other scars discussed below. The Veteran initially received a noncompensable rating for the left hip scar following service. The rating was increased to 10 percent in an August 2001 rating decision. However, a March 2004 rating decision reduced the rating back to noncompensable, effective December 10, 2003.

Following his claim, he was afforded two October 2011 VA examinations which addressed his scars. VA examiner Dr. D.B. addressed the Veteran's history of getting injured. He reported the Veteran was severely injured during service when he was in a motor vehicle accident in 1997. He suffered C4 and C5 fractures and underwent a C4-C5 fusion surgery. The Veteran has a left hip scar which was the location of his bone graft donation area. The examiner also noted the Veteran suffered a laceration to his right hand in service in 1996 during an unrelated event.

With regard to the left hip, Dr. D.B. stated the Veteran's scar is overlying his left lateral pelvis consistent with his bone graft taken from that site. He indicated the scar is non-tender, linear, and does not appear to be hypertrophic or keloid in nature. He reported the left hip scar is approximately 9 centimeters in length.

VA examiner E.E. also addressed the Veteran's left hip scar. She noted the Veteran's scar on his side (or flank) is painful and always tender; however, at most it causes pain at a level of six out of ten. The scar on the anterior trunk was described as linear and 9 centimeters long and approximately four centimeters squared overall.

Thereafter, a September 2016 VA treatment record noted that the Veteran requires a heating pad for his low back pain and that he reported to the examiner that his low back and left hip scar are the source of most of his pain.

Based on this evidence, the Board finds the Veteran's left hip scar can be deemed as painful and he should be afforded a compensable rating for the scar under DC 7804. The Veteran reported to the October 2011 examiner E.E. that his scar on his side is painful and always tender. Thus, the Veteran's disability picture more closely approximates a compensable rating for his left hip scar, in particular, when affording him the benefit of the doubt. See 38 C.F.R. § 4.7.

While the evidence supports his left hip scar is painful, the evidence does not support that the scar is deep, that it covers an area exceeding 12 square inches, that it is unstable, or that it results in limitation of function. Based on this evidence, the Board does not find that a further increase in excess of 10 percent is warranted.

In sum, a 10 percent rating is warranted for the Veteran's left hip scar based on it being found to be painful when applying the benefit-of-the-doubt doctrine. 38 U.S.C.A. § 5107 (b); 38 C.F.R. §§ 3.102, 4.3.

2. Scalp and Neck, Disfigurement and Painful Scarring

With regard to the scalp and neck scars, the RO granted service connection and awarded a ten percent rating following his service. Thereafter, in a January 2012 rating decision, the RO denied an increased rating in excess of ten percent for scars on the neck and scalp. However, in a July 2016 rating decision, the RO granted a separate rating of 30 percent for scars of the scalp and neck based on disfigurement. The Board notes a 10 percent rating was continued for scars on the neck and scalp based on painful scarring. Therefore, the Board reviews the evidence to determine if increased ratings are warranted, including a rating in excess of 30 percent due to disfigurement (DC 7800) and also in excess of 10 percent due to painful scarring (DC 7804).

As noted, the Veteran underwent multiple October 2011 VA examinations which addressed his scars. Examiner E.E. reported the Veteran's neck scar rated as painful at a level of 5 out of 10. The examiner indicated the Veteran had no scars that were unstable. She stated the Veteran's primary injury occurred on his hairline and was not very visible, but was very lengthy, 16 centimeters. She reported the Veteran received 128 stitches as a result of the injury and subsequently underwent a neck surgery with anterior approach on the right side of the neck, causing a scar. She further indicated the Veteran's scalp is painful when hot and has a reported pain level of 8 out of 10. She stated the neck scar was well healed and not obvious and the scar on the anterior was two centimeters by four centimeters in an oval area. She indicated the head scalp was sixteen centimeters by .2 centimeters and described it as a linear scar from the apex of his head fronto-parietal area toward the anterior ear.

During the October 2011 VA examination with Dr. D.B., the Veteran indicated the neck scar is unsightly and interferes with his shaving. The examiner noted the 9 centimeter linear scar on the right anterior portion of the Veteran's neck. He stated it is well healed, and shows no evidence of hypertrophic scaring, dislocation or keloid formation. He also acknowledged the scalp laceration but did not discuss the scar further as it was addressed in the October 2011 VA examination from examiner E.E.

The Board notes that these scars meet the characteristics of disfigurement in DC 7800 as the Veteran's scalp scar is more than thirteen centimeters in length and the neck scar is at least one quarter of an inch wide. Further, under the amended criteria in effect since October 23, 2008, the characteristics of disfigurement may be caused by multiple scars; the characteristics required to assign a particular evaluation need not be caused by a single scar in order to assign that evaluation. See 38 C.F.R. § 4.118, DC 7800 (since October 23, 2008).

On this basis, in July 2016, the RO correctly granted a separate 30 percent rating for disfigurement due to the scars, as two characteristics of disfigurement are met, supportive of a 30 percent rating. 38 C.F.R. § 4.118, DC 7800 (2016). Further, after review of the evidence, the Board finds that the preponderance of the evidence is against a rating in excess of 30 percent for head and neck scars based on disfigurement. The only characteristics showed with regard to these scars are the two discussed above, the scalp scar being 13 or more centimeters and the neck scar at least one quarter of an inch wide.

The VA examinations from October 2011 did not show the surface contour of either scar elevated or depressed on palpation; the scars were not adherent to underlying tissue; there was no abnormal pigmentation; no abnormal skin texture exceeding an area of six square inches was found; no missing underlying soft tissue was noted; and no induration and inflexibility was indicated. Further, there was no skin breakdown, inflammation, edema, keloid formation and the scars did not limit the Veteran's motion or otherwise involve limitation of function.

The Board notes that although it has been over five years since the October 2011 VA examinations, the duty to assist does not generally require that a claim be remanded solely because of the passage of time. See Palczewski v. Nicholson, 21 Vet. App. 174, 181-83 (2007). There has been no medical evidence submitted since the October 2011 VA examinations supporting an increased rating for the head and neck scars, in excess of 30 percent based on disfigurement.

With regard to painful scarring under DC 7804, the Board similarly finds the evidence does not support a rating in excess of 10 percent. There are two scars noted for the scalp and neck and they are listed together as painful, but not unstable. Three or four scars suggestive of a 20 percent rating were not found in the evidence. Thus, under DC 7804, two scars that are both painful support the current 10 percent evaluation. See 38 C.F.R. § 4.118, DC 7804.

In sum, the scalp scar which is 16 centimeters in length, the neck scar is 2 centimeters wide and both are painful. This supports the current 30 percent rating under DC 7800 for disfigurement and the current 10 percent rating under DC 7804 for painful scarring.

3. Right Thumb

With regard to the Veteran's right thumb, October 2011 VA examiner Dr. D.B. addressed the condition. The Veteran reported the scars are unsightly and also that he feels some tightness in his right hand. The examiner noted the Veteran has two linear scars overlying the dorsum of his right thumb metacarpal which are nearly continuous but with a short span of scar free skin between them. He stated the scar does not appear to be hypertrophic or keloid in nature. The examiner indicated the length of the scars were 2.5 centimeters and 3.5 centimeters. Dr. D.B. indicated the scars of the upper extremity were not reported as painful or unstable. Further, he stated the scars did not impact the Veteran's ability to participate in physical or sedentary employment. The Board notes examiner E.E. did not address the Veteran's right hand scars.

Therefore, the Board finds that the evidence does not support an increased (compensable) rating for the Veteran's right thumb scars. See 38 C.F.R. § 4.118, DC 7804. He reported to the October 2011 examiner Dr. D.B. that the scar is unsightly and that it feels tight sometimes; however, he did not report that it was painful or unstable. Further, no additional medical evidence was received thereafter in support of the scars being painful for the Veteran. Additionally, no evidence of record reflects that the right thumb scars are deep, cover an area exceeding 12 square inches, are painful and unstable or result in limitation of function.

As the preponderance of the evidence is against a compensable rating, there is no doubt to be resolved, and a compensable rating for the service-connected right thumb scars is not warranted. 38 U.S.C.A. § 5107 (b); 38 C.F.R. §§ 3.102, 4.3.


ORDER

Service connection for a paranoid schizophrenia is granted.

A 50 percent disability rating for post traumatic headaches is granted, subject to the regulations governing monetary awards.

A 10 percent rating, but not higher, for a scar and residuals of a bone graft of the left the left hip is granted, subject to the regulations governing monetary awards. 

A rating in excess of 30 percent for laceration scars of the scalp and neck, based on disfigurement, is denied.

A rating in excess of 10 percent for laceration scars of the scalp and neck, based on painful scarring, is denied.

A compensable disability rating for scars and residuals of lacerations on right thumb is denied.


REMAND

The Board finds that in light of the allowances above, the Veteran's combined evaluation is affected and thereafter, he will meet the schedular requirements for a TDIU listed in 38 C.F.R. § 4.16 (a).

Nonetheless, because the allowances above have not yet been effectuated, to include the assignment of the additional disability ratings pertaining to service connection for a psychiatric disorder, to include paranoid schizophrenia, as well as increased ratings for post traumatic headaches and a scar of the left hip, the Board cannot properly analyze the Veteran's TDIU claim. In this respect, the Board notes that the TDIU claim is inextricably intertwined with the Board's allowances, and this adjudication of the TDIU claim must be deferred until initial evaluations and effective dates for these disabilities are assigned.

Accordingly, the case is REMANDED for the following action:

1. The RO must implement the Board's allowances concerning the Veteran's claims for service connection for a psychiatric disorder, to include paranoid schizophrenia, as well as increased ratings for post traumatic headaches and a scar on the Veteran's left hip, to include the assignment of initial evaluations and effective dates.

2. Thereafter, the RO must complete any additional evidentiary development necessary to adjudicate a claim for TDIU, to specifically include collecting and verifying information concerning the Veteran's complete educational and occupational history.

3. Thereafter, if appropriate, scheduled the Veteran for an appropriate VA examination to determine whether his service-connected disabilities, either individually or in concert with each other, render him unable to secure and maintain a substantially gainful occupation. Any indicated diagnostic tests and studies must be accomplished. The examiner should identify all limitations imposed on the Veteran due to his physical and psychiatric disabilities.

4. Then readjudicate the TDIU claim on appeal. If the benefit sought remains denied, furnish the Veteran and his representative with a supplemental statement of the case and afford them the opportunity to respond before the file is returned to the Board for further consideration.

The Veteran has the right to submit additional evidence and argument on the matter the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board or by the Court for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).




______________________________________________
STEVEN D. REISS
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs