Citation Nr: 1744031 
Decision Date: 09/27/17 Archive Date: 10/10/17

DOCKET NO. 10-48 341 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Louisville, Kentucky


THE ISSUES

1. Entitlement to service connection for an esophageal tear.

2. Entitlement to a disability rating higher than 30 percent for migraine headaches.

3. Entitlement to a total disability rating based on individual unemployability (TDIU) due to service-connected disabilities.


REPRESENTATION

Appellant represented by: J. Michael Woods, Attorney at Law


ATTORNEY FOR THE BOARD

A.Z., Counsel


INTRODUCTION

The Veteran served on active duty from July 1988 to July 1991.

This matter comes before the Board of Veterans' Appeals (Board) on appeal of rating decisions issued by the Department of Veterans Affairs (VA) Regional Office (RO) in Louisville, Kentucky. 

In February 2014, the Board remanded the issues regarding an esophageal tear and TDIU, along with the issue of entitlement to service connection for an acquired psychiatric disorder. In a September 2016 rating decision, the RO granted service connection for an unspecified depressive disorder. As such constitutes a full grant of the benefits sought on appeal with respect to such issue, that claim is no longer in appellate status. Grantham v. Brown, 114 F.3d. 1156 (Fed. Cir. 1997).

The issue of entitlement to service connection for an esophageal tear is addressed in the REMAND portion of the decision below and is REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDINGS OF FACT

1. The Veteran's migraine headaches disability has been productive of chronic headaches with light and sound sensitivity, along with nausea and vomiting, throughout the appeal period; but not of very frequent completely prostrating and prolonged headaches productive of severe economic inadaptability.

2. Resolving all reasonable doubt in favor of the Veteran, he is unable to secure and follow substantially gainful employment as a result of his service-connected disabilities.




CONCLUSIONS OF LAW

1. The criteria for a disability rating higher than 30 percent for migraine headaches are not met at any time during the appeal period. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 4.3, 4.124a, Diagnostic Code 8100 (2016).

2. The criteria for a TDIU have been met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.340, 3.341, 4.16 (2016).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Due Process Considerations

The Veterans Claims Assistance Act of 2000 (VCAA) and implementing regulations impose obligations on VA to provide claimants with notice and assistance. 38 38 U.S.C.A. §§ 5102, 5103, 5103A, 5107 (West 2014); 38 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2016). 

Neither the Veteran nor his representative in this case has referred to any deficiencies in either the duties to notify or assist; therefore, the Board may proceed to the merits of the claim. See Scott v. McDonald, 789 F.3d 1375, 1381 (Fed.Cir. 2015, cert denied, U.S.C. Oct.3, 2016) (holding that "the Board's obligation to read filings in a liberal manner does not require the Board....to search the record and address procedural arguments when the [appellant] fails to raise them before the Board"); Dickens v. McDonald, 814 F.3d 1359, 1361 (Fed. Cir. 2016) (applying Scott to an appellant's failure to raise a duty to assist argument before the Board).

Furthermore, the Board notes that discussion of compliance with the February 2014 remand directives with respect to the claims decided herein is not warranted, as the Veteran's increased rating claim for migraines was not included in such remand, and the Board is herein granting his previously remanded claim for entitlement to a TDIU. 

Additionally, the Board notes that, as the Veteran's representative submitted a September 2016 private opinion with a waiver of initial RO consideration, the Board may consider it in the first instance. Furthermore, as mentioned, as the Board is granting the claim for a TDIU, there is no prejudice to the Veteran.

In light of the foregoing, the Board finds that VA's duties to notify and assist have been satisfied. Thus, appellate review may proceed without prejudice to the Veteran. See Bernard v. Brown, 4 Vet. App. 384, 394 (1993).

II. Legal Criteria & Analysis

A. Increased Rating Claim

Disability evaluations are determined by the application of the VA's Schedule for Rating Disabilities (Rating Schedule), 38 C.F.R. Part 4. The percentage ratings contained in the Rating Schedule represent, as far as can be practicably determined, the average impairment in earning capacity resulting from diseases and injuries incurred or aggravated during military service and their residual conditions in civil occupations. 38 U.S.C.A. § 1155; 38 C.F.R. §§ 3.321(a), 4.1. Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7.

In any increased rating claim, the Board must discuss whether "staged ratings" are warranted, and if not, why not. Fenderson v. West, 12 Vet. App. 119 (1999); Hart v. Mansfield, 21 Vet. App. 505 (2007).

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, VA shall give the benefit of the doubt to the claimant. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 4.3. 

The Veteran's service-connected headaches disability has been rated under Diagnostic Code 8100 at all times during the appeal period. 

Under Diagnostic Code 8100, a 10 percent rating is warranted for migraine headaches with characteristic prostrating attacks averaging one in 2 months over last several months. 38 C.F.R. § 4.124a, Diagnostic Code 8100. A 30 percent rating for migraine headaches is warranted where there are characteristic prostrating attacks occurring on an average once a month over last several months. Id. A maximum rating of 50 percent is warranted for headaches with very frequent completely prostrating and prolonged attacks productive of severe economic inadaptability. Id.

The phrase "productive of economic inadaptability" does not require that a veteran be completely unable to work to qualify for a 50 percent rating. See Pierce v. Principi, 18 Vet. App. 440, 445-46 (2004).

Here, the Board denied a rating in excess of 30 percent for migraine headaches in the February 2014 decision. The Veteran did not appeal such decision to the Court. 

In September 2014, the VA Medical Center completed a Headaches Disability Benefits Questionnaire based on a review of the Veteran's available records, on the basis that such was a routine future examination to determine the current severity of such disability.

Later that month, the AOJ issued a rating decision which continued the Veteran's 30 percent disability rating for migraine headaches. The Board notes that the rating decision contains conflicting statements-that they had received a copy of his September 2014 and that they had not. The Board has determined the "not" to be a typographical error, as the body of the rating decision makes reference to examination and was the basis for such decision. The Veteran perfected an appeal with respect to such decision.

Turning to the relevant evidence, as noted, a Headaches DBQ was completed in September 2014. The examiner noted use of the Acceptable Clinical Evidence (ACE) process because the existing medical evidence provided sufficient information on which to prepare the DBQ, and that an examination of the Veteran would likely provide no additional relevant evidence.

The clinician indicated that the Veteran's treatment plan does not include taking prescription medication for the diagnosed condition. She noted symptoms of pain in the occipital area, nausea and sensitivity to light. The typical duration of head pain was less than one day. The Veteran was noted to have a history of less frequent prostrating attacks that were not productive of severe economic inadaptability; his headaches in general were not found to impact his ability to work. The clinician included a summary of the Veteran's recent medical history pertaining to his headaches, to include a September 2013 primary care treatment note in which the Veteran reported his headaches had improved after psychiatric treatment and that he believed his headaches were related to tension and stress. In an August 2014 mental health treatment note, the Veteran reported that the use of topiramate was improving his mood and reducing his migraine headaches. The clinician noted that the Veteran is, on average, contacted by a clinician about once or twice a month, and that since his February 2013 headaches examination, there was documentation of only two headaches, apart from another which was attributed to sinusitis.

A February 2015 treatment note indicates that the Veteran had a migraine a couple days ago and takes Topamax for migraine headaches.

In November 2016, the Veteran underwent an in-person examination for his headaches. The clinician noted that the Veteran reported chronic, daily intractable headache pain without specific history of status migrainosus. The Veteran stated that his headache pain will wax and wane but never completely resolve, and that he takes over-the-counter pain reliever daily for such. He reported constant, pulsating or throbbing head pain that worsens with physical activity. Headaches were also accompanied by photophobia, phonophobia and nausea, as well as vomiting about once a week. About once a week, the Veteran said he experience a prostrating headache which prevents him from functioning in normal everyday activities.

The examiner noted that the Veteran described essentially stable headache symptoms from previous evaluations, and that such never apparently significantly impact his ability to work. He determined that the Veteran's prostrating attacks averaged a monthly frequency over the last several months, and that such were not productive of severe economic inadaptability and that there was no functional impact.

The Board accordingly finds that the preponderance of the evidence is against a finding of very frequent completely prostrating and prolonged headaches productive of severe economic inadaptability. 

The Board notes that 38 C.F.R. § 4.124a does not provide a specific definition for "very frequent," but the VBA Manual M21-1 provides guidance regarding frequency of migraines as it applies to Diagnostic Code 8100. Specifically, the VBA Manual M21-1 states that the overall rating criteria structure in 38 C.F.R. § 4.124a, Diagnostic Code 8100, indicates that "very frequent" characteristic prostrating migraine attacks occur, on average, less than one month apart over the last several months. See VBA Manual M21-1, III.iv.4.G.7.f.

Here, the September 2014 VA examiner noted that the Veteran had "less frequent" prostrating attacks and that he had separately reported an improvement in his migraines. The November 2016 VA examiner had characteristic prostrating attacks of migraine headache pain with a frequency, on average, of once every month over the last several months. While the Veteran then reported having weekly prostrating headaches, the examiner determined that the Veteran's headache symptoms were essentially stable. The Board finds the examiner's opinions to be credible and affords them great weight, because they are based on sufficient facts and data applied to reliable principles and methods. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295 (2008).

Therefore, the Board finds that the Veteran does not experience migraines with "very frequent" attacks as defined in VBA Manual M21-1, III.iv.4.G.7.f. Instead, the evidence in this case shows that, on average, the Veteran's migraine attacks occurred at most once a month, and thus, his migraines do not rise to frequency as required by the criteria for a 50 percent rating in Diagnostic Code 8100.

Furthermore, the evidence does not confirm very frequent completely prostrating and prolonged attacks productive of severe economic inadaptability. Here the September 2014 VA examiner found that, when the Veteran's prostrating attacks did occur, they were not productive of severe economic inadaptability. The November 2016 VA examiner stated that there was no functional impact of the Veteran's headaches.

In making such determination, the Board has carefully considered the Veteran's contentions with respect to the nature of his service-connected migraines and notes that he is competent to describe certain symptoms associated with such disability. The Veteran's history and symptom reports have been considered, including as presented in the medical evidence discussed above, and have been contemplated by the disability rating for which the Veteran has been found to be entitled to by the Board. Moreover, the competent medical evidence offering detailed specific findings pertinent to the rating criteria is the most probative evidence with regard to evaluating the pertinent symptoms of the service-connected disability at issue. As such, while the Board accepts the Veteran's statements with regard to the matters he is competent to address, the Board relies upon the competent medical evidence with regard to the specialized evaluation of functional impairment, symptom severity, and details of clinical features of the service-connected disability at issue.

Accordingly, the criteria for the highest rating of 50 percent under Diagnostic Code 8100 are therefore not met at any time during the appeal period and a staged rating is in turn not warranted. Hart, 21 Vet. App. 505. No other diagnostic code is applicable.
 
B. TDIU

The Veteran contends that his various service-connected disabilities prevent him from maintain gainful employment. The record reflects that he is a high school graduate with some vocational training, and was last employed in 2007.

A total disability evaluation may be assigned when the schedular evaluation is less than 100 percent where a Veteran is unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities, provided that, if there is only one such disability, this disability shall be ratable at 60 percent or more, or if there are two or more disabilities, there shall be at least one disability ratable at 40 percent or more and sufficient additional disability to bring the combined rating to 70 percent or more. 38 C.F.R. §§ 3.340, 3.341, 4.16(a).

If a claimant does not meet the aforementioned criteria, a total disability evaluation may still be assigned, but on a different basis. It is the established policy of VA that all Veterans who are unable to secure and follow a substantially gainful occupation by reason of service-connected disabilities shall be rated totally disabled. 38 C.F.R. § 4.16(b). Therefore, the rating boards are required to submit to the Director, Compensation Service, for extra-schedular consideration all cases of Veterans who are unemployable by reason of service-connected disabilities, but who fail to meet the percentage standards set forth in 38 C.F.R. § 4.16(a). Id.

In determining whether a Veteran is unemployable for VA purposes, consideration may be given to the Veteran's level of education, special training, and previous work experience, but not to age or any impairment caused by nonservice-connected disabilities. 38 C.F.R. §§ 3.341, 4.16, 4.19; see also Hersey v. Derwinski, 2 Vet. App. 91, 94 (1992); Faust v. West, 13 Vet. App. 342 (2000). A Veteran need not show 100 percent unemployability in order to be entitled to a TDIU. Roberson v. Principi, 251 F.3d 1378, 1385 (Fed. Cir. 2001).

Presently, the Veteran's service-connected disabilities and corresponding ratings are as followed: unspecified depressive disorder-70 percent, migraines-30 percent; degenerative disc disease of the lumbosacral spine-20 percent; residuals of a left elbow fracture-10 percent; right-sided sciatica with radicular symptoms-10 percent; left-sided radiculopathy-10 percent; hemorrhoids-10 percent; and, maxillary sinusitis-10 percent. Such amounts to a current combined rating for compensation purposes of 90 percent. 38 C.F.R. § 4.25. Thus, he meets the threshold criteria for a TDIU under 38 C.F.R. § 4.16(a). As such, the remaining inquiry is whether he is unable to secure or follow substantially gainful occupation due solely to his service-connected disabilities. 

Turning to the evidence of record, the Veteran underwent a number of VA examinations in February 2013. It was noted he could no longer lift or carry objects due to his lumbar spine disorder.

In September 2013, the Veteran underwent an assessment regarding his mental health in relation to his service-connected disabilities and the functional impact of such. The examiner found that such significantly impacted his ability to perform gainful employment. He opined that the Veteran would have to miss 3 or more work days per month due to mental problems, and need to leave the workplace early 3 or more days per month due to mental problems. He further found that the Veteran would not be able to stay focused to complete simple, repetitive tasks more than 3 days per month for the duration of the workday. The clinician added that the Veteran would likely frequently decompensate when subjected to the normal pressures and constructive criticisms of a job.

In a September 2016 rating decision, the Veteran was granted service connection for an unspecified depressive disorder and awarded a 70 percent rating. Such rating is reflective of occupational and social impairment with deficiencies in most areas, including work.

The Veteran submitted a September 2016 private opinion prepared by a certified vocational evaluator and rehabilitation counselor. She noted various studies pertaining to acceptable absence rates from work and time-off task due to concentration issues. Based on the September 2013 assessment of the Veteran, she concluded that the Veteran would exceed the acceptable amount of work absences and off-task time. It was her opinion that, given the Veteran's physical and mental limitations due to his service-connected disabilities and the occupational limitations of such, he would be unable to retain employment.

While a February 2013 VA examiner found that the Veteran was employable in a sedentary occupational work setting, the Board notes that such determination was made prior to the Veteran being awarded service connection for an unspecified depressive disorder, which has been assessed as causing deficiencies in most areas, including work.

The Board finds the September 2016 private opinion highly probative, as such is based on the functional impact of all of the Veteran's service-connected disabilities, and was prepared by a vocational expert who interviewed the Veteran and discussed his pertinent medical and occupational history. 

Therefore, based on the foregoing evidence, and resolving all doubt in favor of the Veteran, the Board finds that his service-connected disabilities in combination render him unable to secure and follow a substantially gainful occupation consistent with his educational background and employment history. Therefore, entitlement to a TDIU is granted. 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102; Gilbert, supra.


ORDER

A disability rating in excess of 30 percent for migraine headaches is denied.

Entitlement to a TDIU is granted.


REMAND

Although the Board regrets the additional delay, a remand is necessary to ensure that due process is followed and that there is a complete record upon which to decide the Veteran's remaining claim so that he is afforded every possible consideration. 38 U.S.C.A.§ 5103A; 38 C.F.R. § 3.159.

Per the Board's February 2014 remand, VA obtained an Esophageal Conditions DBQ in August 2015 regarding the claimed esophageal tear. During a telephone interview, conducted as part of the DBQ, the Veteran reported that he continues to experience reflux that wakes him up several nights with episodes of nausea and vomiting, and will infrequently vomit blood. The Board previously noted that such symptoms are similar to those reported in service which formed the basis of the tear diagnosis at the time and could be signs of another tear. Accordingly, in the remand, the Board directed that the Veteran undergo all indicated tests, including appropriate radiology test(s).

Here, the Veteran was not provided with a current endoscopy. Instead, the examiner cited the Veteran's last esophagogastroduodenoscopy (EGD), performed in January 2013, which was normal. The examiner found that the Veteran's current complaints of nausea, vomiting, and hematemesis were not due to an esophageal tear, essentially based on the normal January 2013 EGD. The Board finds such DBQ inadequate, as it does not reflect current, comprehensive testing to determine whether the Veteran has suffered another esophageal tear, as was directed by the prior remand. Accordingly, on remand, an adequate examination and opinion must be obtained. Stegall v. West, 11 Vet. App. 268, 271 (1998); D'Aries v. Peake, 22 Vet. App. 97, 105 (2008) (holding that there must be substantial compliance with the terms of a Board remand).

Accordingly, the case is REMANDED for the following action:

Afford the Veteran a VA examination with regard to his claim for service connection for an esophageal tear. The claims file should be made available to the examiner. All indicated tests, including appropriate radiology test(s), must be done, and all findings reported in detail, to include a current EGD. The examiner is then requested to opine as to whether it is at least as likely as not that the Veteran's current complaints that include nausea, vomiting, and hematemesis are due to an esophageal tear. A rationale for this opinion should be included in the examination report.

The appellant has the right to submit additional evidence and argument on the matter the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).




______________________________________________
R. FEINBERG 
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs