﻿Citation Nr: AXXXXXXXX
Decision Date: 09/30/20 Archive Date: 09/30/20

DOCKET NO. 200601-91550
DATE: September 30, 2020

ORDER

Entitlement to service connection for lumbar spine degenerative disc disease (DDD) is granted.

Entitlement to an initial rating of 30 percent, but no higher, for tension headaches is granted.

FINDINGS OF FACT

1. The preponderance of the evidence supports that the Veteran's current lumbar spine degenerative disc disease began during his active duty service. 

2. Since the award of service connection, the Veteran’s tension headaches most closely approximate characteristic prostrating attacks occurring at least once a month, but not very frequent completely prostrating and prolonged attacks productive of severe economic inadaptability.

CONCLUSIONS OF LAW

1. The criteria for service connection for lumbar spine degenerative joint and disc disease have been met. 38 U.S.C. §§ 1110, 1131, 5107; 38 C.F.R. §§ 3.102, 3.303.

2. The criteria for an initial rating of 30 percent, but no higher, for migraine headaches have been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 3.102, 4.3, 4.124a, DC 8100.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty in the Air Force from February 1961 to July 1981.

This matter comes to the Board of Veterans’ Appeals (Board) on appeal from a June 2019 rating decision issued by a VA Regional Office (RO). The RO granted service connection for tension headaches with an initial noncompensable rating effective April 2019. In a July 2019 rating decision, service connection was denied by the RO for lumbar spine degenerative joint and disc disease (lumbar spine). The Veteran than filed a timely VA Form 10182 in June 2020 requesting an appeal to the Board on the Evidence docket for both claims. 

Therefore, the Board may only consider the evidence of record at the time of the agency of original jurisdiction (AOJ) decision on appeal, as well as any evidence submitted by the Veteran or his representative with, or within 90 days from receipt of, the VA Form 10182. 38 C.F.R. § 20.303.

In Rice v. Shinseki, the Court held that a claim for a total rating based on individual unemployability (TDIU) due to service-connected disability, either expressly raised by the Veteran or reasonably raised by the record, involves an attempt to obtain an appropriate rating for a disability and is part of the claim for an increased rating. 22 Vet. App. 447, 453-54 (2009). In this case, the Veteran has not argued, and the record does not otherwise reflect, that the disability at issue renders him unemployable. Accordingly, the Board concludes that a claim for TDIU has not reasonably been raised as part and parcel with this current appeal.

The Board has limited the discussion below to the relevant evidence required to support its finding of fact and conclusion of law, as well as to the specific contentions regarding the case as raised directly by the Veteran, his representative and those reasonably raised by the record. See Scott v. McDonald, 789 F3d 1375, 1381 (Fed. Cir. 2015); Robinson v. Peake, 21 Vet. App. 545, 552 (2008). 

Service Connection

Service connection may be granted for a disability resulting from a disease or injury incurred in or aggravated by active service. See 38 U.S.C. § 1110; 38 C.F.R. § 3.303. "To establish a right to compensation for a present disability, a veteran must show: "(1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service" the so-called "nexus" requirement." Holton v. Shinseki, 557 F.3d 1362, 1366 (Fed. Cir. 2010) (quoting Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004)).

The nexus element may be fulfilled by (1) a nexus opinion or (2) competent and credible evidence showing that the veteran has experienced frequent and persistent symptoms of the disease since service. 38 U.S.C. § 1154 (a); 38 C.F.R. §§ 3.303 (a), (d); see also Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009).

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the Veteran. 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102.

1. Entitlement to service connection for lumbar spine degenerative disc disease (DDD) is granted.

The Veteran contends that he has had low back pain since he injured his back while in service. Specifically, the Veteran asserts he was diagnosed with a herniated disc while in service and has experienced intermittent pain ever since which has progressively gotten worse resulting in the need for back surgery. 

The Veteran’s entrance examination dated February 1962 contained no reports of a pre-existing back condition. Service treatment records (STRs) indicate the Veteran suffered an injury to his back described as pain and weakness in his right leg with paresthesia in September 1962. The examiner’s impression at the time was that the Veteran has a herniated disc and advised hospitalization, but he opposed. In June 1964 the Veteran reported an abrasion and contusion on his back. Another STR dated December 1967 noted the Veteran reported “back problem” with “great amount of pain yesterday”. The Veteran went on to state that he was told he had suffered a herniated disc in September 1962. His separation examination in November 1980 noted no lumbar spine condition and the Veteran denied recurrent back pain. 

Post service treatment record from October 2009, noted low back surgery on L4-L5 of the lower back due to a bulging disc in the mid to late 1980s.

The Veteran was afforded a VA examination May 2019 in which the Veteran reported symptoms of constant pain which he has attempted to remedy with the use of physical therapy and Tylenol as needed. The Veteran further reported that he had lumbar surgery in the 1990’s twice for his back pain. The examiner opined that the "Veteran’s lumbar spine DDD status post left L4 L5 laminotomy is less likely than not caused by or related to suspected herniated disc in service”. The examiner explained that the Veteran’s STRs did not contain persistent symptoms associated with a herniated disc and that the lumbar spine DDD was more likely due to age. 

A private medical opinion was offered by Dr. M.B. in November 2019 in which she stated, “it is as likely as not that the Veteran’s current back condition is related to the herniated disc he suffered in service”. The rationale in support did concede the lack of continuous treatment and reports for back pain associated with a herniated disc however, Dr. M.B. pointed out that the injury was serious enough that a medical professional deemed it necessary for hospitalization. She emphasized that the Veteran was 22 years old at the time of injury and remained in the service for 20 years with reported symptoms of intermittent pain throughout service. She also stated that “it is well known within the medical community an acute injury leading to herniated disc may begin the degeneration process”. Dr. M.B. further opined that the Veteran’s physical activities with life in the Air Force “as likely as not at least aggravated this Veteran’s herniated disc precipitating a chain of events to include increased pain and, over a short course of time, became a source of significant pain and symptoms requiring surgery which resulted in post-surgical degenerative disc disease over time”. 

The Board finds the November 2019 private opinion persuasive. It was based on a thorough review of the claims folder, consideration of the Veteran’s lay statements, and a physical examination. The Board further notes that the Veteran continues to complain of constant low back pain, and he has a current diagnosis of degenerative joint and disc disease of the lumbar spine. 

The Board acknowledges the May 2019 VA examiner’s opinion who averred that the Veteran's current lumbar degenerative disease was not related to service but was instead more likely due to age related changes. She, however, significantly did not mention all documented reports of back pain in the Veteran's STRs and appears to be conclusory with respect to assigning the sole cause of the Veteran’s back condition to age. 

As such, the Board finds the November 2019 private medical opinion of Dr. M.B. to be more persuasive than the May 2019 VA examiner’s opinion. See Prejean v. West, 13 Vet. App. 444, 448-9 (2000) (factors for assessing the probative value of a medical opinion include the thoroughness and detail of the opinion). 

At a minimum, the evidence is at least in equipoise, which is enough to resolve the claim in the Veteran’s favor. Service connection for the claimed lumbar spine disorder is thus warranted and the appeal is granted. 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102.

Increased Rating

Ratings are based on a schedule of reductions in earning capacity from specific injuries or combination of injuries. The ratings shall be based, as far as practicable, upon the average impairments of earning capacity resulting from such injuries in civil occupations. 38 U.S.C. § 1155. Generally, the degrees of disability specified are considered adequate to compensate for considerable loss of working time from exacerbations or illnesses proportionate to the severity of the several grades of disability. 38 C.F.R. § 4.1.

Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. When after careful consideration of all procurable and assembled data, a reasonable doubt arises regarding the degree of disability such doubt will be resolved in favor of the claimant. 38 U.S.C. § 5107(b); 38 C.F.R. §§ 3.102, 4.3.

2. Entitlement to an initial rating of 30 percent, but no higher, for tension headaches is granted.

The Veteran’s tension headaches are currently rated at 0 percent under Diagnostic Code (DC) 8100. Under DC 8100, a 10 percent rating is warranted for migraines with characteristic prostrating attacks averaging one in 2 months over last several months; a 30 percent rating is warranted for migraines with characteristic prostrating attacks occurring on an average of once a month over the last several months; and a 50 percent rating, the highest schedular rating under DC 8100, is warranted for migraines with very frequent completely prostrating and prolonged attacks productive of severe economic inadaptability. 38 C.F.R. § 4.124a, DC 8100. 

The rating criteria of DC 8100 are considered successive, meaning that a claimant cannot fulfill the criteria of the higher rating without fulfilling those of the next lower rating. Johnson v. Wilkie, 30 Vet. App. 245, 252 (2018). This renders 38 C.F.R. §§ 4.7 and 4.21 inapplicable. Johnson, 30 Vet. App. at 252.

The phrase “characteristic prostrating attacks” is used in the criteria corresponding to 10 percent and 30 percent ratings under DC 8100 to describe the nature and severity of migraines, but it is not defined in the regulation. Pursuant to Dorland’s Illustrated Medical Dictionary 1531 (32d ed. 2012), prostration is defined as “extreme exhaustion or powerlessness.” Thus, the phrase “characteristic prostrating attacks” is understood to describe migraine attacks that typically produce extreme exhaustion or powerlessness.

The rating criteria for a 50 percent rating contains several undefined phrases. The descriptive phrase “very frequent” connotes a frequency at least greater than once a month, as is required by the rating criteria corresponding to a lesser 30 percent rating. Johnson, 30 Vet. App. at 253. The phrase “completely prostrating” generally means that the migraine attack must render the veteran entirely powerless. Id. The completely prostrating attacks must also be “prolonged,” which is defined as “to lengthen in time: extend duration: draw out: continue, protract.” Id. (internal citation omitted). Lastly, the 50 percent rating criteria requires that the very frequent completely prostrating and prolonged attacks be “productive of severe economic inadaptability.” Productive can be read as having either the meaning of “producing” or “capable of producing,” and, with regard to severe economic inadaptability, nothing in DC 8100 requires that the claimant be completely unable to work in order to qualify for a 50 percent rating. Pierce v. Principi, 18 Vet. App. 440, 445-46 (2004).

Here, the Veteran contends that he is entitled to a compensable rating for his service-connected tension headaches. The appeal period now before the Board begins in April 2019, which is when service connection went into effect for this condition. See Fenderson v. West, 12 Vet. App. 119 (1999).

The Veteran was afforded a VA examination in May 2019. He reported getting headaches nightly which affected his ability to sleep and that they occur mostly on the left side. He also reported taking Tylenol as needed for the pain. The examiner noted that the headaches were localized to one side with throbbing, sharp as well as dull pain. He further reported that there were no non-headache symptoms associated with headaches like aura. The examiner also noted that the headaches did not result in prostrating attacks and indicated there were no other pertinent findings and no functional impact on the Veteran’s ability to work. Rather, the examiner remarked that the Veteran had retired in 2003 in the field of manufacturing after he suffered a stroke while at work, unrelated to the Veteran’s tension headaches. 

A private medical opinion was offered by Dr. M.B in November 2019 in which the Veteran reported having 2 to 4 prostrating attacks monthly which require him to lie down for 1 to 2 hours at a time. During a headache, he reported having light sensitivity, disturbed concentration, blurred vision, dizziness and fatigue. The Veteran further reported these symptoms impact his ability to function and rated his headache pain at an 8 out of 10 in severity. Upon examination, Dr. M.B. noted the Veteran experiences sensitivity to light, changes in vision as well as dizziness. She further noted that the headaches typically last less than a day and are located on both sides of the head. Dr. M.B. further noted the Veteran does experience non-migraine prostrating attacks more than once per month which are frequent and prolonged. She concluded her examination by stating his symptoms “would lend to missed work with prolonged unscheduled breaks to lie down in a dark quiet area as well as difficulty maintaining concentration for even simple work tasks”. 

Resolving all reasonable doubt, there is evidence showing the Veteran reporting headaches with frequent prostrating attacks averaging at least monthly. Thus, he meets the frequency necessary for a 30 percent rating. 

There is conflicting evidence as to whether the Veteran’s reported headaches are truly “characteristic prostrating attacks” within the meaning of DC 8100. In Johnson v. Wilkie, 30 Vet. App. 245, 252 (2018), it was held that the phrase “characteristic prostrating attacks” plainly describes headaches that typically produce powerlessness or a lack of vitality.

On the one hand, the May 2019 VA examiner notes the Veteran’s description of his headaches and opines that there were no prostrating episodes. Furthermore, the medical evidence of record contains scant evidence of reports of headache pain or associated symptoms, including that of prostrating attacks post service. 

In contrast, the private medical opinion by Dr. M.B. in November 2019 paints a more serious disability picture, to include descriptions of headache pain that last for 1 to 2 hours, with light sensitivity, and dizziness that would result in frequent lost time from work each month. The examiner described such symptoms as causing very frequent prostrating and prolonged attacks.

The Court has held that entitlement to a higher rating should not be denied on the basis of relief provided by medication when those effects are not specifically contemplated by the rating criteria.” Jones, 26 Vet. App. 56, 63. As DC 8100 does not contemplate the effects of medication in alleviating the frequency and duration of the Veteran’s headaches, the Board is precluded from considering the relief afforded by the Veteran’s medication, if any, in evaluating the severity of his disability. Id. 

Here, it is unclear on the face of the examination report whether the May 2019 VA examiner was considering the ameliorative effect of pain medications in rendering the assessment of the severity of symptoms and in finding “no” prostrating episodes. The examiner noted the use of Tylenol by the Veteran but than made no other mention of it throughout the rest of the examination. 

As such, the Board finds that the Veteran is entitled to the benefit of the doubt and based on the manifestations described, his headaches appear to meet the definition of prostrating.

However, his headaches have not been very frequent completely prostrating prolonged attacks productive of severe economic inadaptability. The Board has considered not only whether there has been severe economic inadaptability but whether the headaches have been capable of such. Pierce, 18 Vet. App. at 446. 

Furthermore, the Board is not equating severe economic inadaptability with unemployability. Id.

The medical evidence as a whole does not support migraines that affect the Veteran’s functional ability to work. The May 2019 VA examiner noted that the Veteran’s headaches had no functional impact and no impact on his ability to work. While the Veteran had retired in 2003 from his manufacturing job, this was noted as due to having a stroke at work, which is unrelated to his headaches. At his November 2019 private medical examination, the examiner did indicate more frequent completely prostrating attacks of 2 to 4 times per month lasting 1 to 2 hours. Dr. M.B. further opined that the Veteran’s symptoms would result in missed work with prolonged unscheduled breaks. The Board recognizes that his tension headaches could result in missed work, but the proffered evidence does not demonstrate the Veteran missed out on work or other similar activities to the extent they resulted in severe economic inadaptability. In fact, neither the Veteran nor his representative have identified any specific evidence other than Dr. M.B.’s medical opinion to indicate as such. 

The Court in Johnson also held that the criteria set forth in DC 8100 are conjunctive. 30 Vet. App. at 253. While the Veteran may meet some of the criteria for a 50 percent rating, his symptoms do not satisfy all of the criteria. Specifically, even looking at the November 2019 opinion alone and ignoring all other contrary evidence, the Veteran’s tension headaches result in prostrating attacks 2 to 4 times per month lasting 1 to 2 hours, but they are not prolonged and frequent nor do they result in severe economic inadaptability. Thus, the evidence does not show that all the criteria for a 50 percent rating under DC 8100 have been met.

The Board acknowledges the suffering experienced by the Veteran and he is found competent and credible to provide reports of his symptoms. However, as the Veteran’s headaches do not meet all required criteria for a 50 percent rating, such rating is not warranted.

In sum, a 30 percent rating for headaches is warranted throughout the appeal period. However, as the preponderance of the evidence does not show that the headaches manifest in very frequent completely prostrating and prolonged attacks productive of severe economic inadaptability, the benefit-of-the-doubt doctrine is not applicable. 38 U.S.C. § 5107(b); 38 C.F.R. §§ 3.102, 4.3. Therefore, a rating of 30 percent for headaches, but no higher, is warranted. 

 

 

Shereen M. Marcus

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board S. F. Minnitte, Attorney Advisor

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.