# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No.03-0506

Bruce W. Pierce, Appellant,

v.

Anthony J. Principi,
Secretary of Veterans Affairs, Appellee.

On Appeal from the Board of Veterans' Appeals

(Argued August 11, 2004                    Decided    October 28, 2004  )

*Landon E. Overby*, of Washington, D.C., for the appellant.

*Christine D. Senseman*, with whom *Tim S. McClain*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; and *Edward V. Cassidy, Jr.*, Acting Deputy Assistant General Counsel; all of Washington, D.C., were on the brief, for the appellee.

Before STEINBERG, GREENE, and KASOLD, *Judges*.

STEINBERG, *Judge*:   The appellant, veteran Bruce W. Pierce, through a nonattorney practitioner, seeks review of a December 23, 2002, decision of the Board of Veterans' Appeals (BVA or Board) that denied a disability rating higher than 30% for his Department of Veterans Affairs (VA) service-connected vascular headaches.  Record (R.) at 1-12.  The appellant and the Secretary each filed briefs, and the appellant filed a reply brief.  The appellant also filed pursuant to Rule 30(b) of the Court's Rules of Practice and Procedure two citations to supplemental authority, U.S. Vet. App. R. 30(b), and the Court then heard oral argument in the case.  For the reasons set for below, the Court will vacate the December 2002 BVA decision and remand the matter for readjudication.

## I.  Background

The veteran served honorably on active duty in the U.S. Air Force from January 1977 until

December 1978 and from November 1982 until March 1991. R. at 15, 18. Following his second service period, he filed a claim for VA disability compensation for, inter alia, headaches. R. at 20-23. In May 1992, a VA regional office (RO), inter alia, awarded service connection for his vascular headaches and assigned a 10% rating, effective from March 26, 1991. R. at 27-30. On August 10, 2000, he filed a claim for an increased rating. R. at 61. In support of that claim, he submitted to the VARO May 1994 and August 1995 letters from Dr. Joseph S. Casaly, Medical Director of the Midwest Center for Head Pain Management (R. at 42-44). *See* R. at 62. The veteran had been referred to Dr. Casaly by Dr. Mark Roberto. R. at 43. In the May 1994 letter, Dr. Casaly stated that "the frequency of severe headaches is approximately three days per week of late." *Ibid*. In the August 1995 letter, he stated that the veteran suffered from "headaches of a moderate to severe intensity" and opined that the veteran's "headache status is 'borderline' in terms of headache frequency" but that the "concentration difficulties and memory problems which accompany his headaches are even more disabling than the head pain." R. at 42. Private medical records attached to those letters show treatment for migraines from 1997 through 2000. R. at 45-49. A December 1999 private medical report from Dr. Roberto's office noted that the veteran had complained that his migraines were increasing in frequency to two to four a week and were "[f]airly severe at times". R. at 47.

In August 2000, the veteran was admitted to a VA hospital emergency room where a CT (computed tomography) Scan of his head was conducted. R. at 36. A September 2000 VA neurological consultation report noted that the veteran suffered from a "[m]ixed headache disorder (tension/migraine)" and that "[t]he frequency of the headaches warrants the use of a prophylactic agent." R. at 35. He was prescribed Nortriptyline, Nadolol, and Imitrex at that time. *Ibid*. (Nortriptyline is "used to . . . relieve chronic, severe pain". DORLAND'S ILLUSTRATED MEDICAL DICTIONARY (DORLAND'S) 1151 (28th ed. 1994). Nadolol is "a nonselective B-adrenergic receptor blocker, used in the treatment of angina pectoris and hypertension". DORLAND'S 1098. Imitrex is a "trademark for a preparation of sumatriptan succinate", which is "a selective serotonin antagonist used in the acute treatment of migraine headache[s]". DORLAND'S 821, 1608.) In September 2000, he underwent a VA compensation and pension (C&P) medical examination; he reported that the severity and frequency of his headaches had changed in August 2000 and that he had begun to

experience tunnel vision and photophobia. R. at 54-55. (Photophobia is the "abnormal visual intolerance of light". DORLAND'S 1287.) The examination report noted that he had "[m]ixed vascular tension headache[s]" but that "[t]here were no medical records available at the time of [the] interview and examination." R. at 56. A headache calendar that the veteran maintained recorded that he had experienced 17 migraines in August 2000. Of those, on a scale of 1-to-10 (10 being the most severe), five were noted to be in the 8-to-9 or 9-to-10 range in terms of severity and six were in the 6-to-8 range. R. at 71. His headache calendar also recorded that he had experienced 10 migraines between September 4 and 23, 2003; of those, five were noted to be in the 2-to-3 range, one in the 9-to-10 range, and at least half lasted for six hours or more. R. at 70.

A November 29, 2000, RO decision awarded an increased rating, to 30%, for the veteran's vascular headaches, effective from August 10, 2000. R. at 62-65. The RO concluded:

> Although the medical evidence shows that the frequency of the headaches ha[s] increased, there is no objective medical evidence showing that these headaches are at all prostrating in nature which would affect economic inadaptability. However, based on the totality of the evidence which includes the veteran's subjective statements, and resolving all reasonable doubt in his favor, we feel that the 30[% rating] threshold has been met justifying an increase at this time. A higher evaluation is not warranted unless the objective medical evidence shows very frequent, completely prostrating, and prolonged attacks productive of severe economic inadaptability.

R. at 63. The veteran then filed a Notice of Disagreement (NOD) as to the rating and the effective date assigned in that RO decision. R. at 80. In January 2001, the RO received from Dr. Roberto a letter dated January 11, 2001, that read as follows: "Please allow this letter to serve as verification that Mr. Bruce Pierce has 5-7 incapacitating migraine headaches per month (currently)." R. at 84-85. The veteran also submitted to the RO a letter, dated January 17, 2001, to a Disabled American Veterans (DAV) representative in which the veteran stated that it was "only the third day in the last three weeks that [he had] been well enough to get out of the house." R. at 87. That correspondence also noted that the veteran was in his last month of eligibility for unemployment benefits. *Ibid*. In a January 22, 2001, decision, the RO continued his 30% rating, but awarded him an earlier effective date of August 25, 1999 (apparently based on the date that the veteran's headache calendars had indicated that his headaches had increased (R. at 72)). R. at 90. In February 2002, the RO issued

a Statement of the Case (SOC) regarding the veteran's 30% rating (R. at 100-08), and the appeal went forward to the Board on the rating issue.

In the December 2002 BVA decision here on appeal, the Board reviewed the veteran's headache-diary submissions as well as the September 2000 VA C&P examination report and denied a rating higher than 30% for the veteran's service-connected vascular headaches. R. at 1-11. The Board acknowledged the January 2001 letter from Dr. Roberto and then stated:

> [O]verall, the evidence shows that mild and moderate headaches occurred with significantly greater frequency than the severe headaches enumerated above. Furthermore, while some headaches lasted 10 or 13 hours, more typically they lasted 6 or less hours. Thus, when viewed as a whole, the diary submissions reveal a disability picture that is most nearly approximated by the present disability rating of 30[%] under [38 C.F.R. § 4.124a,] Diagnostic Code [(DC)] 8100.
>
> . . . Moreover, while the veteran stated that he was afflicted with tunnel vision during more severe headaches, he stated that generally his headaches did not interfere with his ability to work. He denied focal neurological deficits during headaches and he denied vomiting. Based on this account of his symptomatology, it cannot be found that his headaches are very frequently completely prostrating or that they produce severe economic inadaptability, as is required for the next-higher rating of 50[%] under [DC] 8100. . . . Moreover, on physical examination, there was no indication that the veteran's mental and/or physical abilities eroded during a headache attack.

R. at 10.

## II. Analysis

### A. Contentions on Appeal

The appellant first argues for reversal of the December 2002 Board decision on the ground that the Board committed clear error by failing to award him a 50% rating under DC 8100 because his headaches satisfied all criteria for the higher rating and "[t]here is no legal or factual basis" for the Board's contrary conclusion. Brief (Br.) at 15. The appellant also asserts that even if his headaches did not satisfy all criteria for a 50% rating, the Board erred by requiring total satisfaction rather than determining which rating criteria his disability picture "more nearly approximates" in

4

accordance with 38 C.F.R. § 4.7 (2002). Br. at 16-19. In response, the Secretary counters that reversal is not appropriate because there is a plausible basis for the Board decision. Br. at 5. He asserts that "[b]y [the a]ppellant's own admission, the attacks have never been 'productive of severe economic inadaptability'". Br. at 7. He also notes that the appellant had been collecting unemployment benefits and "asks the Court to take judicial notice that in Ohio . . . the ability to work is a condition for receiving unemployment benefits." *Ibid*.

In reply, the appellant asserts that because "all of the evidence . . . demonstrates a frequency of headaches that corresponds with the 'very frequent' criterion", the Board's determination that the benefit-of-the-doubt doctrine was not applicable was clearly erroneous. Reply at 3; *see* 38 U.S.C. § 5107(b). He further asserts that he was "unemployed as a result of headaches" and thus necessarily meets the "productive of severe economic inadaptability" criterion. Reply at 3-4 (referring to Appellant's Br. at 15). The appellant contends that the Secretary seems to equate "productive of severe economic inadaptability" with being unemployable and asserts that this "amounts to *post-hoc* rationalization [because t]here is no authority . . . to support th[is] assertion[]." Reply at 5. The appellant also notes that the Secretary did not address the appellant's argument that the Board failed to apply properly 38 C.F.R. § 4.7. Reply at 6-7.

### B. Applicable Law and Regulation

The assignment of a rating to a particular disability is a question of fact, which is reviewable in this Court under the "clearly erroneous" standard set forth in 38 U.S.C. § 7261(a)(4). *See Butts v. Brown*, 5 Vet.App. 532, 535-37 (1993) (en banc); *id.* at 542 (Steinberg, J., concurring) (citing *Lovelace v. Derwinski*, 1 Vet.App. 73, 74 (1990)). Under this standard of review, a Board finding of fact may not be reversed unless the Court, in reviewing all the evidence of record, "'is left with the definite and firm conviction that a mistake has been committed.'" *Gilbert v. Derwinski*, 1 Vet.App. 49, 52 (1990) (quoting *United States v. U. S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). When applying this standard, "'[i]f the [Board's] account of the evidence is plausible in light of the record viewed in its entirety, the [Court] may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.'" *Gilbert, supra* (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985)); *see Mariano v. Principi*, 17 Vet.App. 305, 313 (2003) (applying "clearly erroneous" standard to assess, as directed by

5

38 U.S.C. § 7261(b)(1), Board's application of 38 U.S.C. § 5107(b) "equipoise standard").

In addition, the Board is required to consider all evidence of record and to consider, and discuss in its decision, all "potentially applicable" provisions of law and regulation. *Schafrath v. Derwinski*, 1 Vet.App. 589, 593 (1991); *see* 38 U.S.C. § 7104(a); *Charles v. Principi*, 16 Vet.App. 370, 373 (2002); *Weaver v. Principi*, 14 Vet.App. 301, 302 (2001) (per curiam order); *Sanden v. Derwinski*, 2 Vet.App. 97, 100 (1992). The Board is also required to include in its decision a written statement of the reasons or bases for its findings and conclusions on all material issues of fact and law presented on the record; that statement must be adequate to enable an appellant to understand the precise basis for the Board's decision, as well as to facilitate informed review in this Court. *See* 38 U.S.C. § 7104(d)(1); *Allday v. Brown*, 7 Vet.App. 517, 527 (1995); *Gilbert,* 1 Vet.App. at 56-57 (1990). To comply with this requirement, the Board must analyze the credibility and probative value of the evidence, account for the evidence that it finds persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the claimant. *See Caluza v. Brown*, 7 Vet.App. 498, 506 (1995), *aff'd per curiam*, 78 F.3d 604 (Fed. Cir. 1996) (table); *Gabrielson v. Brown*, 7 Vet.App. 36, 39-40 (1994); *Gilbert*, *supra*.

As to the applicable DC for the appellant's service-connected vascular-headache disability, a 10% rating is warranted for "[m]igraine[s] [w]ith characteristic prostrating attacks averaging one in 2 months over the last several months." 38 C.F.R. § 4.124a, DC 8100 (2002). A 30% disability rating under that regulation is warranted for "[m]igraine[s] [w]ith characteristic prostrating attacks occurring on an average once a month over the last several months." *Ibid*. A 50% disability rating under that regulation is warranted for "[m]igraine[s] [w]ith very frequent completely prostrating and prolonged attacks productive of severe economic inadaptability." *Ibid*.

### C. Reversal Argument

Although the appellant argues that the Board's denial of a rating higher than 30% was clearly erroneous because the severity and frequency of his headaches satisfied the requirements for a 50% rating (Br. at 12-15) and that reversal is thus warranted, for the reasons set forth below the Court cannot make a decision on this question because of inadequacies that the Court finds in the Board decision. *See Gilbert, supra* (holding that Board decision must be adequate to explain to claimant "precise basis" for its conclusions as well as to permit informed judicial review).

6

### D. Statement of Reasons or Bases

The Board stated its principal finding of fact as follows: "The veteran's vascular headaches occur frequently and are generally of minor magnitude, with more severe headaches occurring on occasion; the objective evidence does not demonstrate frequent, completely prostrating and prolonged attacks productive of severe economic inadaptability." R. at 2. However, nowhere in its decision did the Board refer to the appellant's January 17, 2001, letter to his DAV representative, which was forwarded to the RO. That letter stated in full:

> Thank you first of all for taking the time to call me today! Things have been looking quite bad recently with these migraines literally putting me on my back in bed! Today is only the third day in the last three weeks that I have been well enough to get out of the house on my own. You will find enclosed the letter I read to you over the phone. If there is **anything** that I can do to help speed up the process please ask! I am on the last month of unemployment and I have had only three interviews out of all the letters of application that I have sent out. We really appreciate your help!

R. at 87. Under *Francisco v. Brown*, 7 Vet.App. 55, 58 (1994), although all evidence must be considered in the adjudication of a claim for a rating increase, "the present level of disability is of primary concern." The January 17, 2001, letter is the most recent information in the record on appeal (ROA) regarding the appellant's headaches and relates information about headache frequency, severity, incapacitation, and prostration, and employment status. Accordingly, the Board erred by failing to consider and discuss that letter, especially in light of the RO's finding that the appellant's "diary is credible, is consistent with other independent evidence of record, and is therefore accepted as more accurate than the perhaps garbled history at the VA examination" (R. at 92) and the Board's having accepted as factual the appellant's recounting of his headache frequency, prolongation, and severity (s*ee* R. at 8-9). Thus, the Board's statement of reasons or bases was inadequate and did not comply with 38 U.S.C. § 7104(a), (d)(1), and remand for readjudication is required. *See Allday* and *Gilbert*, both *supra*; *see also Caluza* and *Gabrielson*, both *supra*.

In addition, we note that the Board failed to address specifically the application of and interplay between the following regulatory provisions: 38 C.F.R. § 4.3 (2002) (reasonable doubt resolved in favor of claimant), § 4.7 (higher possible evaluation applies "if disability picture more

7

nearly approximates the criteria for that rating[; o]therwise, the lower rating will be assigned"), and 38 C.F.R. § 4.21 (2002) (all the elements specified in a disability grade need not necessarily be found although "coordination of rating with impairment of function will, however, be expected in all instances"). Failure to "acknowledge and consider" these potentially relevant regulations was error. *Schafrath, supra*. Moreover, even if the Court were to determine that the Board, because of the use of the phrase "most nearly approximated" (R. at 10; *see also* R. at 2), had specifically considered § 4.7, its statement would still be inadequate for rating purposes because it pertains only to the diary submissions and apparently to Dr. Roberto's January 2001 letter (*see* R. at 82), and not to the appellant's total "disability picture", 38 C.F.R. § 4.7. On remand, the Board must explain its conclusion as to the applicability of §§ 4.3, 4.7, and 4.21 in terms of each of the factors specified in DC 8100 for a 50% rating – "very frequent", "completely prostrating", "prolonged attacks", and "productive of economic inadaptability" – and the meaning ascribed to these terms in comparison to the DC 8100 criteria for the appellant's current 30% rating. *See Brown v. Gardner*, 513 U.S. 115, 118 (1994) (directing that "interpretive doubt is to be resolved in the veteran's favor").

As to the term "productive of economic inadaptability", the Secretary's counsel conceded at oral argument that "productive of" could be read as having either the meaning of "producing" or "capable of producing". *See Gardner, supra; see also* 38 C.F.R. § 3.102 (2003). Regarding the Board's conclusion that "it cannot be found that his headaches . . . produce severe economic inadaptability", the Court notes that the Board merely listed the evidence it considered without analyzing how that evidence does or does not relate specifically to the term "severe economic inadaptability". R. at 10. As the Court explained in *Gilbert*: "These [Board] decisions must contain clear analysis and succinct but complete explanations. A bare conclusory statement, without both supporting analysis and explanation, is neither helpful to the veteran, nor 'clear enough to permit effective judicial review', nor in compliance with statutory requirements." *Gilbert*, 1 Vet. App. at 57 (quoting *Int'l Longshoremen's Assoc. v. Nat'l Mediation Bd.,* 870 F.2d 733, 735 (D.C. Cir. 1989)); *see also* 38 U.S.C. § 7104(a), (d)(1). Nowhere in the DC is "inadaptability" defined, nor can a definition be found elsewhere in title 38 of the Code of Federal Regulations. The Secretary in his brief discusses "severe economic inadaptability" in terms of the inability to work (Br. at 7), but nothing in DC 8100 requires that the claimant be completely unable to work in order to qualify for

a 50% rating. If "economic inadaptability" were read to import unemployability, the appellant, if he met the economic-inadaptability criterion, would then be eligible for a rating of total disability based on individual unemployability resulting from a service-connected disability (TDIU) rather than just a 50% rating. *See* 38 C.F.R. § 4.16(b) (2002) (providing that "[i]t is the established policy of [VA] that all veterans who are unable to secure and follow substantially gainful occupation by reason of service-connected disabilities shall be rated totally disabled"); *see also* 38 C.F.R. § 4.16(a) (2002) (providing for TDIU rating where disability meets specified rating percentages, less than 100%, if "the disabled person is, in the judgment of the rating agency, unable to secure . . . substantially gainful occupation as a result of service-connected disabilities"); *cf.* 38 C.F.R. § 3.321(b) (2002) (providing for extraschedular ratings "commensurate with the average earning capacity impairment" where disability includes "such related factors as marked interference with employment"). In addition, it is noteworthy that in 1996 the Secretary revised the only other section of title 38 of the Code of Federal Regulations that contained the word "inadaptability". 61 Fed. Reg. 52700 (1996) (effective Oct. 8, 1996). Prior to that revision, which eliminated that word "inadaptability", 38 C.F.R. § 4.129 (1996) related "social inadaptability" to "abnormalities of conduct, judgment, and emotional reactions which affect economic adjustment, i.e., which produce impairment of earning capacity". In any event, in the context of evaluating his headaches, the Board failed to consider the appellant's January 17, 2001, letter stating that he was unemployed, had had only three job interviews, and had been able to leave his house only three times in January 2001.

Finally, as to the Board's determination with regard to headache frequency, although the Board acknowledged that "[t]he evidence of record clearly demonstrates that the veteran currently suffers from very frequent headaches", it stated that "less than one[-]third of the veteran's headache episodes were severe by the veteran's own subjective standards" (R. at 9) and that "the evidence shows that mild and moderate headaches occurred with significantly greater frequency than the severe headaches" (R. at 10). Thus, it appears that the Board may have compared the number of "severe" headaches with the number of "moderate and mild" headaches in order to conclude that a 50% rating was not warranted. However, there is nothing in DC 8100 to indicate that "very frequent" means more frequent than not. Hence, to the extent that the Board reached its conclusion about frequency by comparing the number of "severe" headaches with the number of less severe or

"mild to moderate" ones, the Board's finding of fact as to "very frequent" must be set aside. If that term were to import such a comparison, then the greater number of less-severe headaches that a veteran had, the more difficult it would be for his or her "severe" headaches to be considered "very frequent" so as to meet that requirement for a 50% rating under DC 8100. Such a result would be an absurd one. *See United States v. X-Citement Video, Inc*., 513 U.S. 64, 68-69 (1994); *Timex V.I., Inc. v. United States*, 157 F.3d 879, 886 (Fed. Cir. 1998); *Trilles v. West*, 13 Vet.App. 314, 324 (2000) (en banc); *Simmons v. Principi*, 17 Vet.App. 104, 114 (2003); *Thayer v. Principi*, 15 Vet.App. 204, 210 (2001); *Cottle v. Principi*, 14 Vet.App. 329, 334 (2001); *Faust v. West*, 13 Vet.App. 342, 350 (2000); *Davenport v. Brown*, 7 Vet.App. 476, 483-84 (1995); *Conary v. Derwinski*, 3 Vet.App. 109, 111-12 (1992) (per curiam order) (Steinberg, J., concurring).

Because the Board's statement of reasons or bases failed to address all material issues of fact and law presented on the record and is inadequate to enable the appellant to understand the precise basis for the Board's decision or to facilitate review in this Court, *see* 38 U.S.C. § 7104(a), (d)(1); *Allday, supra, Gilbert*, 1 Vet.App. at 56-57; *see also Caluza* and *Gabrielson*, both *supra*, the Court will vacate the Board decision and remand the matter for readjudication so that the foregoing errors will be corrected.

### III. Conclusion

On the basis of the foregoing analysis, the ROA, and the parties' pleadings, and having "take[n] due account of the rule of prejudicial error" under 38 U.S.C. § 7261(b)(2), the Court will vacate the December 2002 Board decision and remand the matter for expeditious further development and issuance of a readjudicated decision supported by an adequate statement of reasons or bases, *see* 38 U.S.C. §§ 1110, 1131, 7104(a), (d)(1); 38 C.F.R. §§ 3.102, 4.3, 4.7, 4.21, 4.124a DC, 8100; *Fletcher v. Derwinski*, 1 Vet.App. 394, 397 (1991), all consistent with this order and in accordance with 38 U.S.C. § 7112 (as added by the Veterans Benefits Act of 2003, Pub. L. No. 108-183, § 707(b), 117 Stat. 2651, 2673) (requiring Secretary to "take such actions as may be necessary to provide for the expeditious treatment by the Board of any claim that is remanded to the Secretary by the Court"); *see Vargas-Gonzalez v. Principi*, 15 Vet.App. 222, 225-30 (2001) (holding that section 302 of Veterans' Benefits Improvements Act of 1994, Pub. L. No. 103-446, § 302, 108 Stat.

4645, 4658, predecessor of section 7112, applies to all elements of a claim remanded by the Court or Board), and in accordance with all applicable law and regulation. *See Allday*, 7 Vet.App. at 533-34. On remand, the Veterans Claims Assistance Act of 2000, Pub. L. No. 106-475, 114 Stat. 2096, and its implementing regulations at 38 C.F.R. § 3.159 (2003) will apply, *see* 38 U.S.C. §§ 5100-5103, 5103A, 5106, 5107; *Pelegrini v. Principi*, 18 Vet.App. 112 (2004); *Fortuck v. Principi*, 17 Vet.App. 173, 181 (2003); *Charles,* 16 Vet.App. at 374; *Quartuccio v. Principi* 16 Vet.App. 183, 187 (2000). Also, on remand, the appellant will be free to submit additional evidence and argument on the remanded claim, and the Board is required to consider any such evidence and argument. *See Kay v. Principi*, 16 Vet.App. 529, 534 (2002). A remand by this Court or by the Board confers on an appellant the right to VA compliance with the terms of the remand order and imposes on the Secretary a concomitant duty to ensure compliance with those terms. *See Stegall v. West*, 11 Vet.App. 268, 271 (1998). A final decision by the Board following the remand herein ordered will constitute a new decision that, if adverse, may be appealed to this Court only upon the filing of a new Notice of Appeal with the Court not later than 120 days after the date on which notice of the Board's new final decision is mailed to the appellant. *See Marsh v. West*, 11 Vet.App. 468, 472 (1998).

VACATED AND REMANDED.