﻿Citation Nr: AXXXXXXXX
Decision Date: 11/30/20 Archive Date: 11/30/20

DOCKET NO. 181228-2051
DATE: November 30, 2020

ORDER

A 10 percent evaluation, but no higher, for chronic headaches is granted.

A 10 percent evaluation, but no higher, for enlarged prostate with lower urinary tract symptoms is granted.

A 10 percent evaluation, but no higher, for gastroesophageal reflux disease (GERD) is granted.

REMANDED

Entitlement to service connection for a left knee disorder is remanded.

Entitlement to service connection for a right knee disorder is remanded.

Entitlement to service connection for a thoracolumbar spine disorder (claimed as thoracic, mid, and lower back pain) is remanded.

Entitlement to service connection for a neurological disorder of the left lower extremity (claimed as lower back radiating pain to the left leg), to include as secondary to claimed thoracolumbar spine disorder, is remanded.

Entitlement to service connection for right elbow disorder (claimed as pain) is remanded.

Entitlement to service connection for left elbow disorder (claimed as pain) is remanded.

Entitlement to service connection for a left foot disorder is remanded.

Entitlement to service connection for a right foot disorder is remanded.

Entitlement to service connection for left hip disorder (claimed as pain) is remanded.

Entitlement to service connection for slow transit constipation, to include as secondary to the service-connected GERD, is remanded.

FINDINGS OF FACT

1. The Veteran’s headaches more closely approximate characteristic prostrating attacks averaging one in two months over the last several months.

2. The Veteran’s enlarged prostate with lower urinary tract symptoms more closely approximates urinary frequency requiring daytime voiding interval between two and three hours or awakening to void two times per night.

3. Although the Veteran’s GERD manifests as epigastric distress with dysphagia, pyrosis, regurgitation, and is accompanied by substernal or arm or shoulder pain, these symptoms do not result in considerable impairment of health.

CONCLUSIONS OF LAW

1. The criteria for a 10 percent evaluation, but no higher, for chronic headaches are met. 38 U.S.C. §§ 1155, 5103, 5107(b); 38 C.F.R. §§ 4.1, 4.2, 4.3, 4.7, 4.10, 4.124a, Diagnostic Code 8100.

2. The criteria for a 10 percent evaluation, but no higher, for enlarged prostate with lower urinary tract symptoms are met. 38 U.S.C. §§ 1155, 5103, 5107(b); 38 C.F.R. §§ 4.1, 4.2, 4.3, 4.7, 4.10, 4.115a, 4.115b, Diagnostic Code 7527.

3. The criteria for a 10 percent evaluation, but no higher, for GERD have been met. 38 U.S.C. §§ 1155, 5103, 5107(b); 38 C.F.R. §§ 4.1, 4.2, 4.3, 4.7, 4.10, 4.114, Diagnostic Codes 7315-7346.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The matters come before the Board of Veterans’ Appeals (Board) on appeal from a September 2018 Rapid Appeals Modernization Program (RAMP) rating decision of a Department of Veterans Affairs (VA) Regional Office (RO). Prior to this decision, the Veteran elected to opt into RAMP via a May 2018 election form. An August 2018 letter informed the Veteran that VA had withdrawn his Legacy appeal and that it would continue the issues on appeal, under his selected Supplemental-review lane.

After the September 2018 RAMP decision, the Veteran selected the Board Hearing Docket lane under the Appeals Modernization Act (AMA) review system by submitting a new RAMP selection and VA Form 10182 (Decision Review Request: Board (Notice of Disagreement)). Thereafter, in September 2019, the Veteran testified before the undersigned. Accordingly, the Board’s current review is limited to the evidence of record at the time the Veteran opted into RAMP in May 2018, as well as his hearing testimony and within 90 days of the hearing.

Disability ratings are determined by applying a schedule of ratings that is based on average impairment of earning capacity. Separate diagnostic codes identify the various disabilities. 38 U.S.C. § 1155; 38 C.F.R., Part 4. Each disability must be viewed in relation to its history and the limitation of activity imposed by the disabling condition should be emphasized. 38 C.F.R. § 4.1. Examination reports are to be interpreted in light of the whole recorded history, and each disability must be considered from the point of view of the veteran working or seeking work. 38 C.F.R. § 4.2. All reasonable doubt will be resolved in the claimant’s favor. 38 C.F.R. § 4.3. Where there is a question as to which of two disability evaluations shall be applied, the higher evaluation is to be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating is to be assigned. 38 C.F.R. § 4.7.

Separate ratings can be assigned for separate periods based on the facts found a practice known as “staged” ratings. Fenderson v. West, 12 Vet. App. 119 (1999); Hart v. Mansfield, 21 Vet. App. 505 (2007). Staged ratings are appropriate whenever the factual findings show distinct periods where the service-connected disability exhibits symptoms that would warrant different ratings. Id. 

When there is an approximate balance of positive and negative evidence regarding the merits of an issue material to the determination of the matter, the benefit of the doubt in resolving each such issue shall be given to the claimant. 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102. When all of the evidence is assembled, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the Veteran prevailing in either event, or whether a fair preponderance of the evidence is against the claim, in which case the claim is denied. Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

Chronic Headaches

The Veteran asserts the severity of his service-connected chronic headaches warrant a compensable rating. His headaches are currently rated pursuant to 38 C.F.R. § 4.124a, Diagnostic Code 8100.

Diagnostic Code 8100 provides that migraine headaches with less frequent attacks are rated as noncompensable. Migraine headaches with characteristic prostrating attacks averaging one in two months over the last several months are rated at 10 percent. Migraine headaches with characteristic prostrating attacks occurring on an average once a month over the last several months are rated at 30 percent. Migraine headaches with very frequent completely prostrating and prolonged attacks productive of severe economic inadaptability are rated at 50 percent. 38 C.F.R. § 4.124a.

 

The rating criteria do not define “prostrating,” nor has the United States Court of Appeals for Veterans Claims (Court). See Fenderson v. West, 12 Vet. App. 119 (1999) (in which the Court quotes Diagnostic Code 8100 verbatim but does not specifically address the matter of what is a prostrating attack). By way of reference, the Board notes that, according to Webster’s New World Dictionary of American English, Third College Edition (1986), p.1080, “prostration” is defined as “utter physical exhaustion or helplessness.” A very similar definition is found in Dorland’s Illustrated Medical Dictionary 1367 (28th Ed. 1994), in which “prostration” is defined as “extreme exhaustion or powerlessness.”

Also, the term “productive of severe economic adaptability” has not been clearly defined by regulations. The Court has, however, explained that “productive of” for purposes of Diagnostic Code 8100 can either mean producing, or capable of producing. See Pierce v. Principi, 18 Vet. App. 440, 445 (2004). Thus, headaches need not actually produce severe economic inadaptability to warrant a 50 percent rating under Diagnostic Code 8100. Id. at 445-46. Similarly, “economic inadaptability” does not equate to unemployability, as such would undermine the purpose of regulations pertaining to a total disability rating based on individual unemployability. Id. at 446; see also 38 C.F.R. § 4.16. The Board notes, however, that the headaches must be, at a minimum, capable of producing severe economic inadaptability in order to meet the 50 percent criteria.

Based on the evidence, the Board finds the criteria for a compensable rating for the Veteran’s service-connected headaches have been met. Specifically, the evidence reflects migraine headaches with characteristic prostrating attacks averaging one in two months over the last several months.

The Veteran testified that he experienced headache symptoms twice a week and sometimes missed work due to his migraine attacks. The headaches caused him to take a break, lay down or be in a quiet and dark room. At work, he must stay at his cubicle because of his light sensitivity during a migraine attack. His employer accommodated his need for low light by changing it to low light friendly bulbs.

Private treatment records reveal that the Veteran continually experienced worsening headache symptoms. The Veteran kept a headache diary for two months from May to June 2017. Here, he noted experiencing throbbing and dull headaches almost every other day. VA medical records demonstrate the Veteran was prescribed medication to treat migraine pain.

The Veteran was afforded a VA examination in December 2016. The examiner diagnosed the Veteran with tension headaches. Symptoms included pain localized to the left side of the head for less than one day. The examiner noted that the Veteran did not suffer from characteristic prostrating attacks of migraine headache pain, very frequent prostrating and prolonged attacks of migraine headache pain, prostrating attacks of non-migraine headache pain, nor very frequent prostrating and prolonged attacks of non-migraine headache pain. Further, the examiner opined that the Veteran’s headache condition did not impact his ability to work, and commented that the Veteran’s pain behavior, apprehension, and resistance to the examination made a thorough examination difficult. However, as the December 2016 examiner did not address the Veteran’s lay statements, the Board acknowledges his opinion but finds the opinion as less probative than the Veteran’s lay statements.

In April 2019, the Veteran reported to a VA physician that his migraines were occurring more frequently than usual, and occurring three to four times a month, which was twice as many than in the past. The physician noted this was a new issue.

In sum, the Board finds the Veteran’s condition has remained consistent and that a rating increase is warranted for the entire period on appeal. 

The Board acknowledges the December 2016 VA examiner’s opinion finding that the Veteran did not experience characteristic prostrating attacks of migraine headache pain, very frequent prostrating and prolonged attacks of migraine headache pain, prostrating attacks of non-migraine headache pain, nor very frequent prostrating and prolonged attacks of non-migraine headache pain; nor did his headaches affect his ability to work. However, as discussed above, this opinion is less than probative as the examination did not address the Veteran’s lay statements.

The balance of the evidence demonstrates that the Veteran’s competent and consistent lay statements and reports to his VA and private medical providers on the frequency and severity of his condition best represents a 10 percent rating, and the Board therefore awards an increased evaluation to 10 percent. See 38 C.F.R. § 4.124a, Diagnostic Code 8100.

While the Board has considered a 30 percent rating disability, the evidence does not show that the Veteran experiences prostrating attacks that occur on average once a month. Specifically, the Board notes that the Veteran has been employed and the Veteran did not allege that his headache attacks caused him utter physical exhaustion or helplessness once a month, and that he was capable of staying at his cubicle as long as the bulbs are accommodated for his light sensitivities. The Board notes that the Veteran’s headache log and his testimony at the hearing support this finding.

In short, after a review of the record, the Board finds that the evidence demonstrates a 10 percent evaluation, but no higher, for the Veteran’s chronic headaches, and to that extent the claim is granted. 

Enlarged Prostate with Lower Urinary Tract Symptoms

The Veteran asserts the severity of his prostate condition warrants a compensable rating. His prostate condition is currently rated pursuant to 38 C.F.R. §§ 4.115a, 4.115b, Diagnostic Code 7527.

Diagnostic Code 7527 provides that the condition(s) should be “rated as voiding dysfunction or urinary tract infection, whichever is predominant.” 38 C.F.R. § 4.115b. Ratings for dysfunctions of the genitourinary system are found in 38 C.F.R. § 4.115a.

Urinary tract infections are to be rated 10 percent disabling where they require long-term drug therapy, result in 1-2 hospitalizations per year and/or require intermittent intensive management. A 30 percent rating is warranted for recurrent symptomatic infection requiring drainage/frequent hospitalization (greater than two times/year), and/or requiring continuous intensive management.

Voiding dysfunction may be rated as urine leakage, frequency, or obstructed voiding.

For urinary leakage, a 20 percent rating is warranted for urinary incontinence requiring the wearing of absorbent materials which must be changed less than 2 times per day. A 40 percent rating is warranted for urinary incontinence requiring the wearing of absorbent materials which must be changed 2 to 4 times per day. A higher, 60 percent rating is warranted for urinary incontinence requiring the use of an appliance or the wearing of absorbent materials which must be changed more than 4 times per day.

For urinary frequency, a 10 percent rating is warranted for urinary frequency requiring daytime voiding interval between two and three hours or awakening to void two times per night. A 20 percent rating is warranted for daytime voiding interval between one and two hours, or awakening to void three to four times per night. A 40 percent rating is warranted for daytime voiding interval less than one hour or awakening to void five or more times per night.

For obstructed voiding, a noncompensable rating is warranted for obstructive symptomatology with or without stricture disease requiring dilation 1 to 2 times per year. A 10 percent rating is warranted for marked obstructive symptomology with one or more of the following: post void residuals greater than 150cc; markedly diminished peak flow rate (less than 10cc/sec); recurrent urinary tract infections secondary to obstruction; stricture disease requiring periodic dilation every 2 to 3 months. A 30 percent rating is warranted for urinary retention requiring intermittent or continuous catheterization.

Based on the evidence, the Board finds the criteria for a compensable rating for the Veteran’s service-connected prostate condition have been met. 

The Veteran testified that he wakes up twice a night to urinate and sometimes it is hard for the urine to exist his body. Throughout the day, he uses the bathroom three to four times a day. However, he has not been given accommodations at work such as being closer to the bathroom. He denied needing pads or adult diapers. 

VA treatment records from May 2016 reveal complaints of increased urinary frequency and urgency, especially at night. In July 2016, a private physician noted no urinary loss of control.

In December 2016, the Veteran was afforded a VA examination. The Veteran reported an increase in urinary frequency, especially at night or at work, loss of control over the urge to urinate, and slow transit urination. The examiner noted the Veteran’s diagnosis of prostate hypertrophy (BPH) and opined that it did not require use of an appliance, cause urinary frequency, and although it caused decreased force of stream, the force of stream was not markedly decreased. Additionally, the examiner stated that the Veteran’s voiding dysfunction did not cause urinary leakage. However, as the December 2016 examiner did not address the Veteran’s lay statements, the Board acknowledges his opinion but finds the opinion as less probative than the Veteran’s lay statement.

The Veteran reported to a private physician in January 2018 that he had difficulty with urination.

The Board acknowledges the December 2016 VA examiner’s opinion finding that the Veteran did not cause voiding dysfunction did not cause urinary leakage, require use of an appliance, experience urinary frequency, and that although the Veteran’s prostate condition caused decreased force of stream the force of stream was not markedly decreased. However, as discussed above, this opinion is less than probative as the examination did not address the Veteran’s lay statements.

In sum, the Board finds the Veteran’s condition has remained consistent and that a rating increase is warranted for the entire period on appeal. The evidence demonstrates that the Veteran’s competent and consistent lay statements and reports to his VA and private medical providers that the frequency and severity of his condition best represents a 10 percent rating, and the Board therefore awards an increased evaluation to 10 percent. See 38 C.F.R. §§ 4.115a, 4.115b, Diagnostic Code 7527.

While the Board has considered other higher ratings, the evidence does not show that the Veteran experiences recurrent symptomatic infection requiring drainage/frequent hospitalization (greater than two times/year), and/or requiring continuous intensive management; urinary incontinence requiring the wearing of absorbent materials which must be changed less than 2 times per day; daytime voiding interval between one and two hours, or awakening to void three to four times per night; nor urinary retention requiring intermittent or continuous catheterization. Specifically, the Board notes that the Veteran does not allege these symptoms but rather, explained that he sometimes experienced a loss of control and that he noticed an increase in the need to urinate, especially at night or at work. Based on the Veteran’s lay statements and testimony, the Board finds that his symptomatology is more closely approximated by the criteria for 10 percent for urinary frequency in this case. 

In short, after a review of the record, the Board finds that the evidence demonstrates a 10 percent evaluation, but no higher, for the Veteran’s prostate condition, and to that extent the claim is granted. 

GERD 

The Veteran asserts the severity of his GERD warrants a compensable rating. His GERD is currently rated pursuant to 38 C.F.R. § 4.114, Diagnostic Codes 7315-7346. 

Hyphenated Diagnostic Codes are used when a rating under one Diagnostic Code (7315) requires the use of an additional Diagnostic Code to identify the basis for the rating assigned (7346). Here, the hyphenated Diagnostic Code indicates that chronic cholelithiasis or gallstones (Diagnostic Code 7315) is rated under the criteria for hiatal hernia (DC 7346). See 38 C.F.R. § 4.20.

Diagnostic Code 7315 is rated as for chronic cholecystitis or Diagnostic Code 7314. Diagnostic Code 7314 provides the following rating criteria for chronic cholecystitis: 0 percent when mild; 10 percent when moderate with gall bladder dyspepsia confirmed by X-ray technique and with frequent attacks (not over two or three a year) of gall bladder colic with or without jaundice; and 30 percent, the maximum available, when severe with frequent attacks of gall bladder colic.

Under Diagnostic Code 7346, a 10 percent rating is assigned when there are two or more of the symptoms for the 30 percent evaluation of less severity; a 30 percent rating is assigned for persistently recurrent epigastric distress with dysphagia, pyrosis, and regurgitation, accompanied by substernal or arm or shoulder pain, productive of considerable impairment of health; and, a 60 percent rating is assigned for symptoms of pain, vomiting, material weight loss and hematemesis or melena with moderate anemia, or other symptom combinations productive of severe impairment of health.

Based on the evidence, the Board finds the criteria for a compensable rating for the Veteran’s service-connected GERD have been met.

The Veteran testified that he experienced GERD symptoms every morning, describing his symptoms as pain on the inside of his stomach area and then moving towards his back, tasting a bitter taste, and pain in his shoulders. He experienced these symptoms daily until an increase in his medication tapered the occurrence to sometimes. Due to his GERD symptoms, he was sometimes bothered at work and missed work once or twice a month. The Veteran denied experiencing GERD symptoms of vomiting, melena, nor hematemesis.

The Veteran was afforded a VA examination in December 2016. The examiner noted the Veteran’s diagnosis of GERD and his continuous need for medication for the disability. The Veteran reported that he experienced indigestion with heartburn, belly pain, feeling discomfort after eating, and burping up stomach juices and gas. The Veteran stated that his symptoms had worsened, and despite taking his medication, he still experienced heartburn and chest pain. The examiner found the Veteran’s sole symptom due to GERD was reflux. However, as the December 2016 examiner did not address the Veteran’s lay statements, the Board acknowledges his opinion but finds the opinion as less probative than the Veteran’s statements.

A private physician diagnosed the Veteran with GERD and functional dyspepsia in June 2017. VA treatment records note an August 2017 ultrasound of the abdomen showing gallbladder stones and a diagnosis of cholelithiasis. The Veteran’s VA and private treatment records demonstrate complaints and reports of GERD. 

In August 2019, the Veteran requested an appointment with a VA physician because his GERD/acid reflux symptoms were worsening, and he was having pain in his stomach almost every other day.

In sum, the Board finds the Veteran’s condition has remained consistent and that a rating increase is warranted for the entire period on appeal. The Board acknowledges the December 2016 VA examiner’s opinion finding that the Veteran suffered only from acid reflux due to his GERD. However, as discussed above, this opinion is less probative as he did not address the Veteran’s lay statements.

The other evidence of record, however, does demonstrate that the Veteran’s competent and consistent lay statements and reports to his VA and private medical providers that the frequency and severity of his condition best represents a 10 percent rating, and the Board therefore awards an increased evaluation to 10 percent. See 38 C.F.R. § 4.114, Diagnostic Codes 7315-7346. 

While the Board has considered other higher ratings, the evidence does not show that the Veteran experiences persistently recurrent epigastric distress with dysphagia, pyrosis, and regurgitation, accompanied by substernal or arm or shoulder pain, productive of considerable impairment of health; nor severe and frequent attacks of gallbladder colic. Specifically, the Board notes that the Veteran does not allege these symptoms but rather, explained that during a GERD attack, he experienced reflux, dysphagia, bitter taste, pain in his shoulders, and pain in his stomach area that moved to his back. Additionally, the Veteran was able to maintain full-time work, missed work once or twice a month, and that generally, his medication was able to mollify the severity of his symptoms. Thus, the Veteran’s GERD symptoms cannot be described as considerable impairment of health.

In short, after a review of the record, the Board finds that the evidence demonstrates a 10 percent evaluation, but no higher, for the Veteran’s GERD and to that extent the claim is granted. 

In reaching the above conclusions, the Board has considered the applicability of the benefit of the doubt doctrine. However, as the preponderance of the evidence is against the Veteran’s claims beyond what has been awarded, that doctrine is not applicable in the instant appeal. See 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102.

REASONS FOR REMAND

For the reasons set forth below, the Board concludes that the Veteran’s service connection claims must be remanded in order to correct several pre-decisional errors in the duty to assist.

The Veteran contends that his service connection claims for bilateral knee conditions, back pain, low back pain radiating to the left leg, bilateral elbow pain, bilateral foot conditions, and left hip pain are due to service. Specifically, the Veteran explained that he participated in trainings where he had to run or participate in teambuilding exercises, and that his military occupational specialty required him to carry heavy boxes and perform maintenance tasks such as painting and reorganizing. 

His service treatment records are associated with the claims file and demonstrate that he regularly sought treatment for these issues during active duty. The Veteran sought treatment for chronic bilateral knee pain in May 2015, reporting to the physician that his knee pain had worsened over time due to the demands of his job and being on the ship, especially when going up and down stairs or with running/doing cardio. A July 2016 record demonstrates that he complained of dull achy tightness in his trapezius and periscapular pain after moving heavy boxes and gear in the storeroom. Notably, while his August 1990 enlistment evaluations were silent as to any pertinent disabilities, the Veteran’s August 2016 separation Report of Medical History confirmed reports of bilateral painful elbow, left leg, back, feet, and knees. 

The Veteran was afforded separate VA examinations for bilateral knee conditions, back pain, low back pain radiating to the left leg, bilateral elbow pain, bilateral foot conditions, and left hip pain in December 2016.

The Board notes that the same examiner conducted all the December 2016 examinations. For each examination, the examiner noted that he had not reviewed the Veteran’s claims file nor medical records. Further, despite the Veteran’s explicit and continuous complaints of pain, the examiner opined that there was no diagnosis of a knee, back, left leg, elbow, foot, or left hip disability as there was no pathology to render a diagnosis for any of the conditions.

The U.S. Court of Appeals for the Federal Circuit recently found that the term “disability” as used in 38 U.S.C. § 1110 “refers to the functional impairment of earning capacity, not the underlying cause of said disability,” and held that “pain alone can serve as a functional impairment and therefore qualify as a disability.” Saunders v. Wilkie, No. 2017-1466, 2018 U.S. App. LEXIS 8467 (Fed. Cir. Apr. 3, 2018). 

In light of Saunders, a remand is needed as pain alone can serve as a functional impairment and therefore qualify as a disability. The Board finds that new VA examinations are warranted to determine whether the Veteran’s any diagnosed bilateral knee conditions, back pain, lower back pain radiating to the left leg, bilateral elbow pain, bilateral foot condition, and left hip pain are related to his in-service injuries. Further, an examination should determine whether any current knee, back, left leg, elbow, foot, or left hip pain result in functional impairment. See Barr v. Nicholson, 21 Vet. App. 303, 311 (2007); Kowalski 

v. Nicholson, 19 Vet. App. 171, 179 (2005) (a VA examination must be based on an accurate factual premise).

Regarding the Veteran’s constipation claim, he contends that his slow transit constipation is due to his service-connected GERD. 

The Veteran was afforded a VA examination for slow transit constipation in December 2016. Again, the examiner did not review the Veteran’s claims file nor medical records. The examiner did not provide a diagnosis of slow transit constipation although he noted that the Veteran was taking required continuous medication for it. Finally, the examiner did not provide an etiology opinion as to whether the Veteran’s slow transit constipation is related to his active duty service or secondary to his service-connected GERD.

When VA undertakes to provide a Veteran with an examination, that examination must be adequate for VA purposes. See Barr, supra. As such, the Veteran should be scheduled for a new VA examination. The Board notes that the Veteran’s post-separation treatment records show diagnosis of slow transit constipation along with diagnosis and treatment for GERD. An opinion addressing both direct and secondary service connection with adequate rationale is needed and should be provided addressing these relevant notations and diagnoses.

The matters are REMANDED for the following action:

1. Schedule the Veteran for an appropriate VA examination with an examiner who has not previously participated in this case to determine the nature and etiology of the Veteran’s bilateral knee conditions, back pain, lower back pain radiating to the left leg, bilateral elbow pain, bilateral foot condition, and left hip pain. The claims file must be made available to and be reviewed by the examiner in conjunction with the examination.

Following review of the claims file and examination of the Veteran, discuss any relevant diagnoses and whether the Veteran has any current bilateral knees, thoracolumbar spine, a neurological disorder of the left lower extremity, bilateral elbow, feet and left hip disorders. The Board reminds the Examiner that a current disability is a functional impairment in earning capacity and that pain can be considered a current disability for VA compensation purposes. 

The examiner is then asked to opine as to whether any current bilateral knees, thoracolumbar spine, a neurological disorder of the left lower extremity, bilateral elbow, feet and left hip disorders found are at least as likely as not (i.e. 50 percent or greater) incurred in, due to or otherwise caused by the Veteran’s active service, to include the treatment found in his service treatment records.

In addressing the above, the examiner should also specifically discuss the Veteran’s lay statements regarding onset of symptoms and any continuity of symptomatology since onset and/or since discharge from active duty. The examiner should also consider any other pertinent evidence of record, as appropriate. All findings should be reported in detail and all opinions must be accompanied by a clear rationale.

2. Schedule the Veteran for an appropriate VA examination to determine the nature and etiology of the Veteran’s slow transit constipation. The claims file must be made available to and be reviewed by the examiner in conjunction with the examination.

Following review of the claims file and examination of the Veteran, the examiner should provide the following opinions: 

(1) Whether the Veteran’s slow transit constipation is at least as likely as not (i.e. 50 percent or greater) etiologically related to the Veteran’s active service.

(2) Whether it is at least as likely as not that slow transit constipation is proximately due to his service-connected GERD.

(3) Whether it is at least as likely as not that the Veteran’s slow transit constipation is aggravated by his service-connected GERD. State whether there was an increase in disability that was medically ascertainable, regardless of permanence. Any increase in the slow transit constipation should be described in terms of diagnosis, severity, and duration. Secondary service connection is warranted for any incremental increase in disability.

In addressing the above, the examiner should also specifically discuss the Veteran’s lay statements regarding onset of symptoms and any continuity of symptomatology since onset and/or since discharge from active duty. The examiner should also consider any other pertinent evidence of record, as appropriate. All findings should be reported in detail and all opinions must be accompanied by a clear rationale. 

 

 

MARTIN B. PETERS

Acting Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board J. Lee

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.