Citation Nr: AXXXXXXXX
Decision Date: 06/30/21 Archive Date: 06/30/21

DOCKET NO. 191125-61584
DATE: June 30, 2021

ORDER

Entitlement to a maximum schedular 50 percent rating for posttraumatic headaches is granted from February 24, 2015 forward.

Entitlement to a rating in excess of 70 percent for posttraumatic stress disorder (PTSD) is granted from February 24, 2015 forward.

REMANDED

Service connection for sleep apnea is remanded.

Entitlement to total disability due to individual unemployability (TDIU) is remanded.

FINDINGS OF FACT

1. The Veteran's headaches are capable of producing severe economic inadaptability.

2. The severity, frequency, and duration of the Veteran's PTSD symptoms more closely approximate occupational and social impairment with deficiencies in most areas; there is not total social and occupational impairment.

CONCLUSIONS OF LAW

1. The criteria for a maximum rating of 50 percent for posttraumatic headaches have been met. 38 U.S.C. §§ 1155, 5103, 5103A, 5107; 38 C.F.R. §§ 3.102, 3.159, 3.321, 4.1, 4.3, 4.7, 4.14, 4.124a, Diagnostic Code (DC) 8100.

2. The criteria for a disability rating of 70 percent for PTSD have been met from February 24, 2015. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.1, 4.3, 4.7, 4.126, 4.130, Diagnostic Code (DC) 9411.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty in the United States Army from December 2010 to November 2011 and December 2012 to February 2015.

The Board notes that the rating decisions on appeal was issued in September 2019. 

During higher level review, the AOJ determined that additional evidentiary development was necessary, and thus, unilaterally switched the Veteran's appeal to the Supplemental Claim lane. The AOJ issued a September 2019 rating decision, which is the rating on appeal. In November 2019, the Veteran timely filed a VA Form 10182 and elected evidence review. 38C.F.R. §19.2(d). Based on the Veteran's choice to pursue an evidence review of his appeal, the Board can only consider evidence of record prior to the September 2019 AMA supplemental rating decision and any evidence received within 90 days of the November 2019 VA Form 10182.

By a June 2020 Board decision, in pertinent part to this appeal, the Board denied service connection for sleep apnea, denied a rating in excess of 30 percent for posttraumatic headaches, denied a rating in excess of 50 percent prior to June 17, 2017 for PTSD, and denied entitlement to TDIU. The Veteran appealed these denials. 

In a December 2020 Order, the Court granted the Joint Motion for Partial Remand (JMPR) and vacated the Board's June 2020 decision in part. The case was returned to the Board for compliance with the terms of the JMPR.

Increased Ratings

Disability ratings are assigned in accordance with VA's Schedule for Rating Disabilities and are intended to represent the average impairment of earning capacity resulting from disability. See 38 U.S.C. § 1155; 38 C.F.R. §§ 3.321(a), 4.1. If two disability evaluations are potentially applicable, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. Reasonable doubt regarding the degree of disability will be resolved in favor of the claimant. 38 C.F.R. § 4.3.

As noted in the JMPR, the appeal period starts with the Veteran's separation from service from his second period of service in February 24, 2015.

1. Posttraumatic headaches from February 24, 2015 

The JMPR indicates that the Board failed to explain why the criteria for a disability rating in excess of 30 percent was not met in light of the holding in Pierce v. Principi, 18 Vet. App. 440, 445-46 (2004). The JMPR instructs that when considering whether a veteran's headache symptoms produce severe economic inadaptability, the Board must also consider whether those symptoms are "capable of producing" severe economic inadaptability; they do not necessarily have to be productive of severe economic inadaptability.

During the period on appeal, the Veteran's headaches have been rated as 30 percent disabling under DC 8100. Under DC 8100, a 30 percent rating is warranted for characteristic prostrating attacks occurring on an average once a month over last several months. A 50 percent rating is warranted for very frequent completely prostrating and prolonged attacks productive of severe economic inadaptability. 38 C.F.R. § 4.124a, DC 8100.

The phrase "characteristic prostrating attacks," as used under DC 8100, means attacks that typically produce powerlessness or a lack of vitality. Johnson v. Wilkie, 30 Vet. App. 245, 246 (2018). In other words, the term "prostrating" takes on its plain meaning of "lacking in vitality or will: powerless to rise: laid low."

The word "severe," as used in the various diagnostic codes, is not defined in the VA Rating Schedule. Rather than applying a mechanical formula, the Board must evaluate all of the evidence, to the end that its decisions are "equitable and just." 38 C.F.R. § 4.6.

The phrase "productive of economic inadaptability" can be read as having either the meaning of "producing" or "capable of producing" severe economic inadaptability. See Pierce v. Principi, 18 Vet. App. 440, 445 (2004). The term "inadaptability" is not defined. However, nothing in DC 8100 requires that the claimant be completely unable to work in order to qualify for a 50 percent rating. Id. at 445-46.

The medical evidence does not show that the Veteran's headaches were productive of severe economic inadaptability. See June 2014 and May 2019 VA Headache Examinations. Of further note, while the June 2014 VA examination found prostrating attacks once every month, the May 2019 examination did not. 

Notwithstanding this, the issue expressed in the JMPR was whether the Veteran's headaches were "capable of producing" severe economic inadaptability. In this regard, both the June 2014 and May 2019 examiners recorded the Veteran's contention that he experienced headaches a couple of times a week usually lasting no more than 2 hours. The examiners further recorded that about twice a month his headache pain required him to lay down and rest. As to functional impact, both examiners found that headaches had a functional impact on the Veteran's ability to work and recorded in their reports the Veteran's contention that when he has headaches he cannot concentrate on study/work and sometimes needed bed rest.

The plain language meaning of the term capable means "having traits conducive to or features permitting something." Merriam-Webster, https://www.merriam-webster.com/dictionary/capable. In light of the rating criteria under DC 8100, a frequency of twice a month is higher than the frequency of once per month contemplated by a 30 percent rating. Additionally, needing to lay down or bed rest is contemplated by the term prostrating, but the duration of the reported headaches were not necessarily prolonged as they lasted at most 2 hours. However, there is still a finding in the record that the headaches significantly functionally impacted the Veteran's ability to work. Based on these facts and resolving reasonable doubt in the Veteran's favor, his headaches were capable of producing severe economic inadaptability as their frequency and need for bed rest are conducive of economic inadaptability. 

Based on the foregoing, throughout the appeal period, the criteria for a maximum 50 percent disability rating for posttraumatic headaches is warranted. 38 U.S.C. § 5107(b); 38 C.F.R. § 4.3; Pierce v. Principi, 18 Vet. App. 440 (2004).

2. PTSD from February 24, 2015 to June 16, 2017 

Pertinent to this issue, the JMPR did not vacate the portion of the Board's decision granting a rating of 70 percent for PTSD effective June 17, 2017, and thus the issue on appeal has been recharacterized. 

The Veteran's PTSD has been rated as 50 percent disabling under DC 9411 from February 24, 2015 to June 16, 2017. Under DC 9411, a 50 percent rating is assigned when symptoms such as flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; or difficulty in establishing and maintaining effective work and social relationships cause occupational and social impairment with reduced reliability and productivity.

A 70 percent rating is assigned when symptoms such as suicidal ideation; obsessional rituals which interfere with routine activities; intermittently illogical, obscure, or irrelevant speech; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a worklike setting); or inability to establish and maintain effective relationships cause occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood.

A 100 percent rating is assigned when symptoms such as gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; or memory loss for names of close relatives, own occupation or own name cause total occupational and social impairment.

Under the General Formula for Mental Disorders (General Formula), the Board must conduct a "holistic analysis" that considers all associated symptoms, regardless of whether they are listed as criteria. Bankhead v. Shulkin, 29 Vet. App. 10, 22 (2017); 38 C.F.R. § 4.130. The Board must determine whether unlisted symptoms are similar in severity, frequency, and duration to the listed symptoms associated with specific disability percentages. Then, the Board must determine whether the associated symptoms, both listed and unlisted, caused the level of impairment required for a higher disability rating. Vazquez-Claudio v. Shinseki, 713 F.3d 112, 114-118 (Fed. Cir. 2013). 

From February 24, 2015 to June 16, 2017, the Board concludes that the evidence of record does reflect that the Veteran's PTSD symptoms caused the level of impairment required for a disability rating of 70 percent. 

Review of the VA and private examinations reflect that the Veteran does retain occupational and social functioning. These private and VA examinations do not reflect that the Veteran retains no occupational function and on this basis the Board denies a 100 percent rating for the period in appellate review.

In this regard, the June 2017 private psychological examination conducted by a private clinician reported that the Veteran's PTSD resulted in severe limitations of social and occupational functioning. The private clinician described the Veteran as pleasant and cooperative but anxious and lacking focus; however, his focus improved during the interview. His thoughts were organized and complete, but his mood was depressed. His affect was broad and appropriate to the conversation. His interaction was reasonable and appropriate, his memory was good, and his account of his personal history was linear and believable. The private clinician gave a medical history summary beginning in 2011, and excerpts of selected statements from the Veteran. The Veteran reported having a girlfriend in Holland and moving there in September 2015. The Veteran reported they frequently fight and he has become socially isolated. The private clinician reported the Veteran was in college and had two work attempts, one at store and another at an unspecified business in Holland, but experienced job issues due to PTSD. The private clinician provided no indication of what exact PTSD symptoms were manifesting at school and in these two jobs, nor indicated the frequency and severity of these unnamed symptoms. The private clinician concluded that the Veteran has deficiencies in most areas, such as work citing to his two failed jobs since discharge, school citing to his need for excessive time to complete his work, and family relations citing to fighting with his girlfriend. The VA examinations do not reflect greater level of functional impairment. 

This evidence reflects severe but not total impairment.

In short, the preponderance of the evidence supports a finding that the severity, frequency, and duration of the Veteran's symptoms resulted in the level of impairment required for a 70 percent rating, but no higher, during February 24, 2015 to June 16, 2016. 

 

REASONS FOR REMAND

3. Entitlement to service connection for sleep apnea

The JMPR essentially found that the VA examinations did not provide sufficient basis for the finding of no diagnosis. This is a pre-decisional error. The Board remands for correction of this error. 

4. Entitlement to total disability due to individual unemployability (TDIU) 

The JMPR identifies that the issue of TDIU could be significantly impacted by the issue of service connection for sleep apnea, and thus the JMPR identified these issues as inextricably intertwined. The Board finds this is the law of this case. The above grants do not moot this issue for the entire issue under review, and thefore, the Board finds that the issue shoud be remanded as intertwinned. 

 

The matters are REMANDED for the following action:

Obtain an updated VA examination to address whether it is at least as likely as not that the Veteran has sleep apnea, and is so, whether such is attributable to service. The examiner should fully discuss whether a sleep study is necessary to address this question. If no sleep study is provided or relied upon, a basis for this determination should be provided with complete rationale.

 

 

Nathaniel J. Doan

Veterans Law Judge

Board of Veterans' Appeals

Attorney for the Board AD

The Board's decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.